UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARCUS ELDERKIN,

                            Plaintiff,

v.                                               9:20-CV-1043
                                                 (MAD/TWD)

LAMAR ROMEO,
                            Defendant.
_____

APPEARANCES:                           OF COUNSEL:

MARCUS ELDERKIN
Plaintiff, *pro se*
20-A-1491
Fishkill Correctional Facility
P.O. Box 1245
Beacon, New York 12508

GLEASON DUNN WALSH & O'SHEA          MARK T. WALSH, ESQ.
Counsel for Defendant
40 Beaver Street
Albany, New York 12207

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

## I.    BACKGROUND

Marcus Elderkin ("Plaintiff") commenced this *pro se* action against the Addictions Care

Center ("ACC"), ACC Director Lamar Romeo ("Defendant" or "Romeo"), and two unknown

ACC staff members.  (Dkt. No. 1.)  After dismissing his original complaint, the Honorable Mae

A. D'Agostino, United States District Judge, reviewed what the Court construed as his amended

complaint (Dkt. No. 16) in accordance with 28 U.S.C. § 1915, and found Plaintiff's Fourteenth

Amendment claims, pursuant to 42 U.S.C. § 1983 ("Section 1983"), against Romeo required a response.  (Dkt. No. 19.)

In this action, Plaintiff contends he was a participant in a drug program at the ACC in July 2020.  (Dkt. No. 40.)[1]  On July 24, 2020, Plaintiff asserts Defendant took him into his office to discuss claims that he was dealing drugs.  *Id*.  At that meeting, Plaintiff claims Defendant locked Plaintiff in his office and "attempted to force my pants down."  *Id*.  According to Plaintiff, Defendant told Plaintiff that if he performed sexual acts he would get a "get out of jail free card[.]"  *Id*.  During the course of Defendant pulling his pants down, Plaintiff claims his penis got caught in his pant zipper which resulted in a cut on the top of his penis.  *Id*.  Plaintiff was ultimately dismissed from the ACC's program and was thereafter returned to jail.  *Id*.  As noted above, the Court construed these facts as possibly alleging a violation of Plaintiff's Fourteenth Amendment rights.  (Dkt. No. 19.)

Defendant has now moved to dismiss the amended complaint for failure to state a claim for which relief could be granted.  (Dkt. No. 36.)  In his motion, Defendant argues Plaintiff's claims must fail because the ACC is a private not-for-profit New York corporation and thus its employees are not susceptible to a Section 1983 claim.  *Id*. at 5-10.  In his response, Plaintiff did not address Defendant's legal arguments but instead reiterated his factual allegations that

---

[1]  The Court will consider factual assertions contained in Plaintiff's opposition and in his original complaint to the extent they are consistent with the allegations contained in the amended complaint.  *See Alsaifullah v. Furco*, No. 12–CV–2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (noting that "although courts generally may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss, the mandate to read the papers of pro se litigants generously makes it appropriate to consider [the] plaintiff's additional materials," but only "to the extent that [they are] consistent with the allegations in the complaint" (italics and internal quotation marks omitted)); *Rodriguez v. Rodriguez*, No. 10–CV–891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) ("[W]hen analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings.").

Defendant attempted to force him to engage in sexual acts. (Dkt. No. 40.) After carefully considering the motion, the Court recommends granting Defendant's motion to dismiss.

## II.    DISCUSSION

### A.    *Standard of Review*

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion tests the legal sufficiency of the complaint and whether it conforms to Rule 8(a)(2) of the Federal Rules of Civil Procedure. To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. at 679 (internal citation and punctuation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears there are not "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). In other words, a complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id*. (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*).  Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted).  An opportunity to amend is not required where "[t]he problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id*.

### B.    State action

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws shall be liable to the party injured." 42 U.S.C. § 1983.  Thus, to state a claim under Section 1983, a plaintiff must allege (1) a person acting under the color of state law, or a "state actor," (2) violated a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487

U.S. 42, 48-49 (1988); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002)

("[T]he United States Constitution regulates only the Government, not private parties.").

As noted above, Defendant asserts Plaintiff's claims cannot survive because the ACC is a

private not-for-profit corporation and thus its employees are not subject to suit under Section

1983. As Defendant correctly points out, Section 1983 does not apply to "merely private

conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 560

U.S. 40, 49-50 (1999) (citations omitted). Here, the Court finds ACC is a private treatment

facility, not a state actor. To that end, Defendant provided a copy of ACC's current Certificate

of Good Standing from the New York Department of State to demonstrate it is a private New

York not-for-profit corporation. (Dkt. No. 36-3.) The Court is entitled to take judicial notice of

ACC's status as a not-for-profit business incorporated in New York for purposes of deciding this

motion. *See Maller v. Rite Aid Corp.*, No. 1:14-CV-0270, 2016 WL 1275628, at *3 (N.D.N.Y.

Mar. 31, 2016) ("the Court may take judicial notice of Rite Aid New York's status as a business

incorporated in New York based upon documents filed with the New York State Department of

State.") (citations omitted).

Nevertheless, there are certain circumstances where a private person or entity can be said

to be a state actor. Specifically, a private entity's activity can be attributed to the government in

three situations: (1) the entity acts using the coercive power of the state or is controlled by the

state (the "compulsion test"); (2) the entity willfully participates in joint activity with the state or

its functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) the

state has delegated a public function to the entity (the "public function" test). *Fabrikant v.

French*, 691 F.3d 193, 207 (2d Cir. 2012). The fundamental question under each test is whether

the private entity's challenged actions are "fairly attributable" to the government.  *Id*. (citing

*Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

After reviewing the entire record and all the documents related to this action, the Court

can only find one instance where Plaintiff offhandedly asserts putative state involvement.  To

that end, in his original complaint, he asserts that the "drug court" "sent" him to the ACC in lieu

of prison.  (Dkt. No. 1 at 5.)  However, even if Plaintiff was required to participate in an inpatient

treatment program as an alternative to incarceration, he has not plausibly alleged that ACC or

Defendant are state actors who would be subject to liability under Section 1983 under any of the

tests outlined above.  *See, e.g.*, *Liverpool v. City of New York*, No. 1:19-CV-5527 (CM), 2019

WL 3745734, at *2 (S.D.N.Y. Aug. 7, 2019) (finding an inpatient treatment facility was not a

state actor); *Vaughn v. Phoenix House Programs of New York*, No. ECF 1:14-CV-3918 (RA),

2015 WL 5671902, at *5 (S.D.N.Y. Sept. 25, 2015) ("That Plaintiff opted to participate in the

program at Phoenix House in lieu of completing a prison sentence does not does not transform

the treatment facility and its employees into state actors, nor does it render their actions in

implementing the internal requirements of the treatment program—which were not created or

directed by the court—into state action."); *Mele v. Hill Health Ctr.*, 609 F. Supp. 2d 248, 258–59

(D. Conn. 2009) (finding no state action by defendants who administered a drug intervention

program even though the state permitted criminal defendants to complete such program in lieu of

prosecution or serving a sentence).

Here, because Plaintiff has failed to allege any facts that would tend to indicate

Defendant acted under color of state law, the Court must recommend dismissing his Section

1983 claims.  However, in light of his *pro se* status, the Court further recommends providing

Plaintiff one final opportunity to amend his complaint to provide more detail as to ACC's

relationship with his court sentence.  Notably, there are at least some instances where a

putatively private drug treatment facility has been found to be acting under color of state law.

*See, e.g.*, *Johnson v. White*, No. 06CIV2540, 2010 WL 3958842, at *4 (S.D.N.Y. Sept. 9, 2010).[2]

## III.    CONCLUSION

After carefully considering the record, the Court recommends finding that, as currently

pled, Plaintiff's claims against Defendant pursuant to Section 1983 fail as a matter of law.

Accordingly, the Court recommends granting Defendant's motion to dismiss this action with

leave to replead.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendant's motion to dismiss the amended complaint (Dkt.

No. 36), be **GRANTED**; and it is further

**RECOMMENDED** that the Court **DISMISS** Plaintiff's amended complaint (Dkt. No.

16) with **LEAVE TO REPLEAD**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Order and Report-

Recommendation, along with copies of the unpublished decisions cited herein in accordance

with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

---

[2]  In that case, the Court first found the defendant had waived the argument regarding whether it was acting under color of state law, but then considered the issue in the alternative and found the treatment center was "fulfilling the role" of the New York State Department of Corrections.  *See Johnson*, 2010 WL 3958842, at *4 n.5.  The Court reasoned that, "[b]ecause Plaintiff was required to undergo inpatient treatment at the ARC as an outgrowth of his sentence, and because the ARC accepted him on those terms, the ARC 'had been delegated a public function by the state' in its relationship to Plaintiff."  *Id*. (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated: October 18, 2021
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[3]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2013 WL 3972514
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Talib ALSAIFULLAH, Plaintiff,

v.

Nurse Administrator FURCO, in her official
and individual capacity, Medical Director
Genovese, in her official and individual
capacity, and Superintendent Heath, in his
official and individual capacity, Defendants.

No. 12 Civ. 2907(ER).
|
Aug. 2, 2013.

**OPINION & ORDER**

RAMOS, District Judge.

**\*1** *Pro Se* Plaintiff Talib Alsaifullah ("Plaintiff" or "Alsaifullah"), while incarcerated at Sing Sing Correctional Facility, commenced this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendants Nurse Administrator B. Furco, Medical Director Maryann Genovese, and Superintendent Phillip Heath. Plaintiff alleges violations of his rights to substantive due process and to equal protection of the laws pursuant to the Fourteenth Amendment, and to be free of cruel and unusual punishment pursuant to the Eighth Amendment. He further alleges claims under the Health Insurance Portability and Accountability Act ("HIPAA"), the Americans with Disabilities Act of 1990 ("ADA"), and state law claims for violation of New York State Public Officer Law and New York State Public Health Law. Complaint ("Compl."), Doc. 2. Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 29. For the reasons discussed below, Defendant's motion to dismiss is GRANTED.

**I. Background**

**a. Factual Background** [1]

**i. Grievance Hearings**

Plaintiff is a prisoner at Sing Sing Correctional Facility ("Sing Sing") and has Hepatitis C. Compl. at 3–5. On July 21, 2011, Plaintiff attended an Inmate Grievance Review Committee ("IGRC") hearing ("IGRC hearing" or "grievance hearing") concerning his requests for medical accommodations, which included obtaining a medical shower, a bus pass and ground-floor housing. *Id.,* Ex. C. Attendees at the meeting included Defendant Nurse Administrator B. Furco ("Nurse Furco"), Corrections Counselor T. Chaffin, Sergeant B. Thorpe, and inmates Carlos Leiva, Gregory Chrysler and D. Alweiss. *Id.,* Exs. B–C. Nurse Furco was present at the hearing as "a consultant pertaining to medical procedures and protocol," and did not have a vote towards the outcome of the hearing. *Id.,* Ex. I; *see id.,* Ex. A–4. Plaintiff alleges that while he was discussing "how he cannot tolerate specific medications" because of his liver problems, Nurse Furco "blurted out": "That medication don't affect your Hep C." *Id.,* Ex. C. Plaintiff responded that he did not appreciate her disclosing his medical information and Nurse Furco replied, "Duh, you mentioned it the first time." *Id.*

After the July 21 grievance hearing, Plaintiff notified Defendants Medical Director Genovese ("Director Genovese") and Superintendent Heath ("Superintendent Heath") of the incident by filing a grievance. Compl. at 4; *id.,* Ex. B. On September 27, Superintendent Heath issued an "Inmate Grievance Program: Superintendent Response" ("Superintendent Response"), which concluded that Nurse Furco had divulged Plaintiff's Hepatitis C condition "inadvertently." *Id.,* Ex. C. The Superintendent Response also noted that (1) on September 23, the Director of Facility Health Services met with Nurse Furco to discuss HIPAA and medical protocol and (2) inmate Gregory Chrysler, present at the grievance hearing, stated that Nurse Furco had disclosed Plaintiff's condition "inadvertently." *Id.*

**\*2** Plaintiff alleges that Superintendent Heath failed to "accept or deny" his grievance and that this failure was a violation of the prison grievance policy procedures. Compl. at 3. Plaintiff also cites to a written statement by Gregory Chrysler where he explains that he had "no opinion as to whether [Nurse Furco's] statement was inadvertent," and that his statement as it appears in the Superintendent Response "must have been misconstrued." *Id.,* Ex. E. Plaintiff subsequently appealed Superintendent's Heath's decision to the Inmate Grievance Program: Central Office Review Committee ("CORC"), *id.,* Ex. F., and on January 18, 2012, CORC upheld Superintendent Heath's decision. *Id.,* Ex. G.

On July 28, 2011, Plaintiff attended a second IGRC hearing intended to address his allegation that Nurse Furco improperly disclosed his medical information at the July 21 hearing. *Id.,* Exs. H–K. Plaintiff claims that Nurse Furco attended the July 28 hearing and that her attendance presented a "conflict of interest." *Id.* He further alleges that Nurse Furco "insisted that she stay [in the room] ... even though the plaintiff expressed ... [that] he felt uncomfortable ... due to [Nurse Furco's] disregard for [his] health and safety." Compl. at 4.

### ii. Plaintiff's Fall and Injury

On July 6, 2011, Plaintiff fell after tripping over a broken concrete step and alleges that he injured himself because the prison facility had failed to install hand rails on the top portion of the walkway in the school tunnel. PL's Opp. Mem. Doc. 25 at 8; Compl., Exs. L–N, P. Plaintiff filed an Inmate Grievance Complaint on July 14 and asked that "[h]and rails are provided or I am accommodated to not be required to walk down or up [the] walkway." Compl., Ex. L. On August 2, the IGRC denied Plaintiff's grievance and noted: "The tunnel is scheduled to be renovated, the status of handrails throughout the entire tunnel is unknown. The grievant is advised to address a bus pass with his medical provider." *Id.,* Ex. M. Plaintiff appealed the IGRC ruling to the Superintendent the following day. *Id.* On August 12, Superintendent Heath issued a Superintendent Response which stated that the tunnel was scheduled for renovation in the future and "[i]f [Plaintiff] feels he cannot navigate the stated tunnel due to medical issues, he should review the reasons why with facility medical staff." *Id.,* Ex. N. On February 15, 2012, CORC denied Plaintiff's appeal of Superintendent Heath's decision and noted that the school tunnel renovation plans did not include installing handrails on the top portion of the walkway. *Id.,* Ex. O ("CORC notes that the plans designed by OGS are code compliant and that handrails will not be installed on the top portion of the walkway"). CORC also indicated that "[w]ith respect to the grievant's appeal, CORC advises him to address his medical concerns at sick call and any reasonable accommodation requests in accordance with Directive # 2614." *Id.*

**\*3** Plaintiff alleges that Superintendent Heath "contributed to the plaintiff significantly injuring his right shoulder, right thumb and right index finger due to falling in the 'tunnel' area of a walkway that failed to have safety precautions in place, ... [and only had] handrails in certain parts of the tunnel ...." Compl. at 5. He further alleges that Superintendent Heath "knew this problem [of lack of handrails] existed but failed to

remedy the situation," *id.* at 8, and claims that Superintendent Heath is "responsible for [the facility's] upkeep and safety." PL's Opp. Mem. Doc. 25–1 at 1. In his opposition papers, Plaintiff further alleges that Superintendent Heath "[d]id not make available another mode of travel within the facility to avoid the prospect of an injury occurring on the state property he was responsible for," and that Plaintiff sought the handrails to accommodate his "daily travels." PL's Opp. Mem. Doc. 25–2 at 5. However, Plaintiff also claims that, at some unspecified point in time, "he was finally accommodated with a bus pass." *Id.* at 6. He states that "[t]his was done by the diligent efforts of plaintiff, via grievance and [the] medical department." *Id.*

### b. Procedural History

Plaintiff requested leave to proceed in *forma pauperis* on April 12, 2012 and filed a Complaint with the Court that same day. Doc. 1. Plaintiff brings suit under Section 1983 for violations of his rights to substantive due process and equal protection of the laws pursuant to the Fourteenth Amendment, and to be free of cruel and unusual punishment pursuant to the Eighth Amendment. He further alleges claims under HIPAA and the ADA, and state law claims for violation of New York State Public Officer Law and New York State Public Health Law. Compl. at 2–8.

Plaintiff claims that each Defendant "acted under the color of state [law], while acting [in] the scope of their official capacities and obligations and within their individual capacities ...." *Id.* at 4. With respect to Nurse Furco, Plaintiff alleges that her disclosure of his Hepatitis C condition at the first grievance hearing and attendance at the second grievance hearing violated the Eighth Amendment, and that her disclosure also violated Plaintiff's right to substantive due process and equal protection under the laws pursuant to the Fourteenth Amendment, as discrimination against an individual with a disability. *Id.* at 4–6. Plaintiff further alleges that Nurse Furco violated HIPPA and state law. *See generally id.* at 6.

As against Director Genovese, Plaintiff recites the same allegations and further notes that as a supervisor of Nurse Furco, Director Genovese was "aware" of her subordinate's acts and failed to properly train or supervise Nurse Furco. *Id.* According to Plaintiff, "[p]rior to any decision of [Superintendent Heath] or CORC, [D]efendant Genovese was made aware that her subordinate had violated HIP[A]A laws, but only acted after the fact and not in a meaningful way as to admit that acts of divulging confidential information is

punishable civilly or criminally, as well as being subjected to departmental discipline." *Id.*

**\*4**  Finally, as to Superintendent Heath, Plaintiff asserts the same allegations as against the other two defendants and claims that he failed to train and supervise Nurse Furco and Director Genovese, and that he failed to accept Plaintiff's grievance filing. *Id.* at 7–8. Plaintiff further alleges that Superintendent Heath violated Plaintiff's rights under the Eighth Amendment by failing to maintain a safe environment and provide proper accommodations to prisoners with disabilities by ensuring that handrails were placed throughout the walkway "that had already been deem[ed] to be in need of repairs." *Id.* at 8. Finally, Plaintiff asserts that Superintendent Heath failed to correct a policy or custom of not accommodating disabled inmates. *Id.*

On December 20, 2012, Defendants filed a motion to dismiss the Complaint, Doc. 29, Plaintiff responded in opposition on October 23, 2012, Doc. 25, [2] and on December 7, 2012, filed a document which the Court will treat as a surreply. [3] Doc. 34.

## II. Discussion

### a. Standard of Review

On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court must accept as true all of the factual allegations from the complaint, and draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir.2010). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory statements. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The complaint must adhere to Fed.R.Civ.P. 8(a), which has been interpreted to require that it contain enough factual matter for the claim to be plausible on its face. *Id.* (citing *Twombly,* 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). Rule 8(a) "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. If the plaintiff has not "nudged [his] claims across the line from conceivable to

plausible, [the] Complaint must be dismissed." *Twombly,* 550 U.S. at 570.

In the case of a *pro se* plaintiff, a court is obligated to construe the complaint liberally, *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir.2011), and to interpret the claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor,* 709 F.Supp.2d 218, 224 (S.D.N.Y.2010) (citing *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Id.* (quoting *Twombly,* 550 U.S. at 555) (internal quotation marks omitted). The Second Circuit recently held in *Walker v. Schult,* 717 F.3d 119 (2d Cir.2013) that "[a] district court deciding a motion to dismiss *may* consider factual allegations made by a *pro se* party in his papers opposing the motion." *717 F.3d at 122 n. 1* (emphasis added) (citing *Gill,* 824 F.2d at 195 (considering a *pro se* plaintiff's affidavit in opposition to a motion to dismiss in addition to those in the complaint)).

### b. Section 1983 claims

**\*5**  To state a claim under 42 U.S.C. § 1983, a defendant must have been acting under the "color of state law" when he deprived the plaintiff of a constitutional or federal statutory right. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1986). Section 1983 does not create any rights, but merely provides "a procedure for redress for the deprivation of rights [already] established." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (citation omitted). The Second Circuit has held that it is "well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983." *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)) (internal quotation marks omitted).

#### i. Constitutional Claims against Defendants in their Official Capacities

Plaintiff's Complaint seeks damages from Defendants in their individual and official capacities. Compl. at 4. The Eleventh Amendment, however, precludes suits for monetary damages from proceeding against states or state officials acting in their official capacity, unless the state has waived its sovereign immunity. *Florida Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 684, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982) (citing *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978)); *accord McMillan v. Monroe Cnty., Ala.,* 520 U.S. 781, 785 n. 2, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) ("[A] suit against a governmental officer in his official capacity is the same as a suit against [the] entity of which [the] officer is an agent." (alterations in original) (citations and internal quotation marks omitted)). Section 1983 does not abrogate Eleventh Amendment immunity, *Quern v. Jordan,* 440 U.S. 332, 338, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and New York has not consented to Section 1983 suits in federal court. *Gross v. New York,* 428 F. App'x 52, 53 (2d Cir.2011) (citing *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38–39 (2d Cir.1977)). Damages are thus not recoverable in a Section 1983 action against state officials acting in their official capacities. *Davis v. New York,* 316 F.3d 93, 101–02 (2d Cir.2002). Here, Plaintiff only asserts claims for monetary damages, Compl. at 7, and, accordingly, all of Plaintiff's constitutional claims against Defendants in their official capacities are dismissed for lack of subject matter jurisdiction. *Jean–Laurent v. Lawrence,* 12 Civ. 1502(JPO)(SN), 2013 WL 1129813, at *4 (S.D.N.Y. Mar. 19, 2013). However, Plaintiff's allegations against Defendants in their individual capacities are not barred by the Eleventh Amendment, *Hafer v. Melo,* 502 U.S. 21, 27–31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), and the Court addresses the merits of those claims below.

#### ii. Substantive Due Process: Right to Privacy Claim

Plaintiff alleges that Defendants violated his right to privacy when Nurse Furco disclosed his Hepatitis C status at the July 21, 2011 prison grievance hearing. The United States Constitution recognizes a right to privacy which protects "the individual interest in avoiding disclosure of personal matters." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.,* 631 F.3d 57, 63 (2d Cir.2011) (citing *Doe v. City of N.Y.,* 15 F.3d 264, 267 (2d Cir.1994) (quoting *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)). Specifically, the Due Process Clause of the Fourteenth Amendment protects a "right to privacy [that] can be characterized as a right to 'confidentiality,' " which "includes the right to protection regarding information about the state of one's health." *Doe,* 15 F.3d at 267. "This constitutional right to privacy extends in a *limited* way to prisoners as well." *Matson,* 631 F.3d at 64 (emphasis added) (citing *Powell v. Schriver,* 175 F.3d 107, 112 (2d Cir.1999) ("[I]nmates retain those constitutional rights that are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system.") (internal quotation marks and alterations omitted)).

**\*6** However, "the interest in the privacy of medical information will vary with the condition." *Id.* (quoting *Powell,* 175 F.3d at 111) (internal quotation marks omitted); *id.* (citing *Doe,* 15 F.3d at 267 (explaining that a constitutional right to privacy for some diseases is greater than for others because while "there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over," this is "especially true with regard to those infected with HIV or living with AIDS")). A medical condition is deemed to be confidential if it is "excruciatingly private and intimate [in] nature" and is "likely to provoke ... an intense desire to preserve one's medical confidentiality." *Id.* (quoting *Powell,* 175 F.3d at 111) (internal quotation marks omitted). To date, the Second Circuit has recognized such a privacy right with respect to an individual's HIV status, *Doe,* 15 F.3d at 266–67, and transsexualism, *Powell,* 175 F.3d at 110–12.

In *Doe,* the Second Circuit explained that, as with any "serious medical condition," a person's choice to inform others that he has contracted "what is at this point invariably and sadly a fatal, incurable disease [HIV/AIDS] is one that [ ]he should normally be allowed to make for h[im]self" 15 F.3d at 267. The court further noted that such a right is "especially true with regard to those infected with HIV or living with AIDS, considering the unfortunately unfeeling attitude among many in this society toward those coping

with the disease," and further, "[a]n individual revealing that she is HIV seropositive potentially exposes herself not to understanding or compassion but to discrimination and intolerance." *Id.*

Likewise, in *Powell,* the Second Circuit held that "[l]ike HIV status as described in *Doe,* transsexualism is [an] unusual condition that is likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others." *Powell, 175 F.3d at 111.* The Court also ruled that "[t]he excruciatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter, is really beyond debate." *Id.* Furthermore, "[i]n extending the constitutional right of privacy to cover transsexualism, [the court] recognized the 'narrow parameters' in which such a right exists." *Matson, 631 F.3d at 64* (quoting *Powell, 175 F.3d at 112*).

Most recently, in *Matson,* the Second Circuit upheld the Rule 12(b)(6) dismissal of a privacy claim where the plaintiff alleged that the defendants had violated her constitutional right to privacy by publicly disclosing her medical condition of fibromyalgia. *Matson, 631 F.3d at 58, 61.* The court explained that unlike HIV, fibromyalgia, although a serious condition, was not a fatal disease that "carr[ies] with it the sort of opprobrium that confers upon those who suffer from it a constitutional right of privacy as to that medical condition," *id.,* and that revealing the condition of fibromyalgia would not "expose a person ... to discrimination and intolerance." *Id. at 67* (quoting *Doe, 15 F.3d at 267*) (internal quotation marks omitted). The court further noted that "[a] general medical determination or acknowledgment that a disease is serious does not give rise *ipso facto* to a constitutionally-protected privacy right," *id. at 65,* and "[i]n considering claims that a constitutional right of privacy attaches to various serious medical conditions, we also proceed on a case-by-case basis. In doing so, we examine all the relevant factors that cut both in favor of and against extending privacy protection to such medical conditions." *Id. at 66–67.*

 **\*7** Plaintiff here asks the Court to extend the right to privacy to Hepatitis C patients. Plaintiff alleges that Hepatitis C is a serious disease that is prevalent among the prison population and carries a great deal stigma. PL's Opp. Mem. Doc. 25–1 at 6. Specifically, Plaintiff states: "[Hepatitis C] is life-threatening; contributes to pre-conditions of other infirmities

and is communi[c]able and infectious. In prison circles [Hepatitis C] is closely associated with AIDS and most people infected with HIV/AIDS are coinfected with Hep[a]titis." *Id.* He further alleges that after Nurse Furco's disclosure, he was "shunned by certain inmates at Sing Sing in the manner of playing contact sports or sharing of cigarett[e]s." *Id.* at 7.

In *Watson v. Wright,* 08 Civ. 62(NAM)(GJD), 2010 WL 55932 (N.D.N.Y. Jan. 5, 2010), the Western District of New York held that there is "no basis in *Powell* and its progeny for holding that, in a prison setting, ... Hepatitis C ... is the type of condition that gives rise to constitutional protection." 2010 WL 55932, at *1 (citing *Powell, 175 F.3d at 112*); *see also id.* (citing *Hamilton v. Smith,* 06 Civ. 805(GTS)(DRH), 2009 WL 3199531, at *15 n. 18 (N.D.N.Y. Jan. 13, 2009), *report and recommendation adopted as modified,* 06 Civ. 0805(GTS)(DRH), 2009 WL 3199520 (N.D.N.Y. Sept. 30, 2009) (inmate had no right to privacy concerning high blood pressure, high cholesterol, and Hepatitis A); *Rush v. Artuz,* 00 Civ. 3436(LMM), 2004 WL 1770064, at *12 (S.D.N .Y. Aug. 6, 2004) (inmate had no right to privacy regarding wrist injury and stomach problems); *Rodriguez v. Ames,* 287 F.Supp.2d 213, 220 (W.D.N.Y.2003) (inmate had no right to privacy concerning treatment for proctitis)). The *Watson* court further explained:

> Hepatitis C has been held to be a serious medical condition for Eighth Amendment purposes ...; however, there is no basis in the case law to hold that, in the prison context, it is the type of unusual serious medical condition that, if disclosed, is likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others, *Powell, 175 F.3d at 111* ..., or expose a plaintiff to 'discrimination and intolerance,' [*Doe, 15 F.3d at 267*] so as to give rise to a Fourteenth Amendment right to privacy. The *Powell* rationale has been extended to only one additional medical condition: the district court in *Fleming v. State Univ. ofN.Y.,* 502 F.Supp.2d 324, 342–44 (E.D.N.Y.2007), found

a Fourteenth Amendment privacy violation where a doctor alleged that his residency program had disclosed his sickle-cell anemia to a prospective employer, and defendants did not have a substantial interest in disclosure. The interests of the individual and the state in the prison setting (as in *Powell* and the instant case) differ substantially from those at issue in *Fleming,* and the rationale in *Fleming* does not support a privacy claim in the case at bar.

**\*8** *Id.* at \*1 n. 1. *But see Makas v. Miraglia,* 05 Civ. 7180(DAB)(FM), 2007 WL 152092, at \*10 (S.D.N.Y. Jan. 23, 2007) ("Although the dissemination of information about cholesterol or thyroid levels to officials outside the [New York State Office of Mental Health] seems innocuous, [plaintiff] suggests that they may have also been privy to information about whether he has syphilis or hepatitis, conditions which arguably could subject him to opprobrium and which are unrelated to the issue of his eligibility to be released from a secure environment.").

However, the Court here need not decide whether Plaintiff possessed a right to privacy in the disclosure of his Hepatitis C status. Even if Plaintiff did have a right to privacy over the disclosure of his Hepatitis C condition, prison officials "can impinge on that right ... to the extent that their actions are 'reasonably related to legitimate penological interests.' " *Powell,* 175 F.3d at 112 (citation omitted). In *Watson,* the court held that "the disclosure of medical information during a [prison] grievance proceeding, where the information is related to that proceeding[,] does not violate an inmate's right to privacy, whether the disclosure is to non-medical staff or to inmates who are on the [Grievance Committee]." 2010 WL 55932, at \* 8; *id.* at \*1 (*comparing Gowins v. Greiner,* 01 Civ. 6933(GEL), 2002 WL 1770772, at \*9 (S.D.N.Y. Jul. 31, 2002) (submission of plaintiff's medical record in response to his grievance concerning his medical treatment was reasonably related to the legitimate penological interest of adjudicating the grievance), *with Powell,* 175 F.3d at 112 ("gratuitous" disclosure of transsexual inmate's confidential medical information as humor or gossip is not reasonably related to a legitimate penological interest)). Plaintiff here argues that the grievance hearing "was premised on receiving accommodations for arthritis and neurop[a]thy conditions."

PL's Opp. Mem. Doc. 25–1 at 7. However, in Plaintiff's statement of facts, he alleges that Nurse Furco revealed his Hepatitis C status while Plaintiff was discussing how he could not tolerate specific medications because of liver problems. Compl., Ex. C. Hepatitis C is an infectious disease which affects the liver. *See Hilton v. Wright,* 673 F.3d 120, 123 (2d Cir.2012); *see also* PL's Opp. Mem. Doc. 25–1 at 8. Therefore, by discussing which medications affected his liver, Plaintiff effectively put his Hepatitis C condition at issue at the hearing. Thus, as a matter of law, the disclosure was reasonably related to the legitimate penological interest of adjudicating the grievance and does not constitute a violation of Plaintiff's right to privacy. Accordingly, Plaintiff's right to privacy claim is DISMISSED.

### iii. Equal Protection Clause Claim

Plaintiff alleges that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by treating him differently from other inmates with infectious/communicable diseases, including individuals with Hepatitis C, "[b]ecause the [D]efendants did not expose the[ ] health status [of those inmates] before non[-]medical staff or other inmates." PL's Opp. Mem. Doc. 25–1 at 8. Plaintiff further asserts that he suffers from five "impairments" which he believes classify him as disabled under the ADA: (1) Hepatitis C; (2) drug addiction and alcoholism; (3) Post–Traumatic Stress Disorder; (4) rheumatoid arthritis/neuropathy; and (5) cosmetic disfigurement. *Id.*

**\*9** The Equal Protection Clause provides that "all persons similarly circumstanced shall be treated alike." *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (quoting *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920)). To prove an equal protection violation, claimants must prove purposeful discrimination by a government actor, which is directed at a suspect class, such as a race, national origin, sex or religion. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona,* 915 F.Supp.2d 574, 615 (S.D.N.Y.2013) (citations omitted). A plaintiff may plead intentional discrimination in violation of the Equal Protection Clause in "several ways," *Brown v. City of Oneonta,* 221 F.3d 329, 337 (2d Cir.2000), including by pointing to (1) "a law that expressly classifies on the basis of [a protected category]"; (2) "a facially neutral law or policy that has been applied in an unlawfully discriminatory manner"; or (3) "a

facially neutral policy that has an adverse effect and that was motivated by discriminatory animus." *Pyke v. Cuomo,* 567 F.3d 74, 76 (2d Cir.2009) (citation and internal quotation marks omitted). In the prisoner context, in order to establish an equal protection violation, the plaintiff must show that "the disparity in treatment cannot survive the appropriate level of scrutiny which ... means that he must demonstrate that his treatment was not reasonably related to any legitimate penological interests." *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005) (quoting *Shaw v. Murphy,* 532 U.S. 223, 225, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001)) (internal quotation marks omitted).

Here, Plaintiff does not allege that any law or policy expressly classifies on the basis of disability or Hepatitis C status, *see* Defs.' Mem. 8; however, the Court construes the unclear allegations in the Complaint to state that Sing Sing had a policy of disclosing inmates' Hepatitis C status during grievance hearings. As an initial matter, "inmates with Hepatitis C, without more, do not fall within the type of express protected classification in *Brown* for which a similarly situated group is not required to establish a similarly situated group ....

" *McKenna v. Wright,* 01 Civ. 6571(WK), 2002 WL 338375, at *12 n. 12 (S.D.N.Y. Mar. 4, 2002).[4] Furthermore, Sing Sing's alleged policy would only violate the Equal Protection Clause where its adverse effects reflect purposeful discrimination. *McKenna,* 2002 WL 338375, at *11. "Discriminatory purpose 'implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its *adverse effects* upon an identifiable group." *Id.* at *12 (quoting *Hayden v. Cnty. of Nassau,* 180 F.3d 42, 50 (2d Cir.1999)) (internal citation marks omitted). Here, Plaintiff's papers are devoid of any allegation that Plaintiff's medical condition was disclosed *because* of its effect on him as an individual with Hepatitis C. *See generally McKenna,* 2002 WL 338375, at *12 (citing *Hayden,* 180 F.3d at 50–51 (affirming dismissal of equal protection claim where plaintiffs' allegations were insufficient to establish that county officials had acted because of a desire to adversely affect the plaintiffs)).

**\*10** However, in his opposition papers, Plaintiff asserts that his equal protection claim is based on a "class of one" theory. Pl.'s Opp. Mem. Doc. 25–1 at 8. Viewing the facts in the light most favorable to Plaintiff, he alleges that Nurse Furco arbitrarily disclosed his Hepatitis

C status at the July 21 grievance hearing, and that other inmates with "infectious/communicable diseases," including "[Hepatitis C]/HIV/AIDS/MRSA/Tuberculosis" did not have their medical status "expose[d]" before non-medical staff and other inmates at grievance hearings. *Id.* Unlike the classic equal protection claim, the "class of one" equal protection guarantee "extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Miner v. N.Y. State Dep't of Health,* 02 Civ. 3180(MBM), 2004 WL 1152491, at *4 (S.D.N.Y. May 24, 2004) (quoting *Harlen Assocs. v. Incorporated Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001)) (internal quotation marks omitted). To state a valid equal protection "class of one" claim, a plaintiff must allege that (1) he has been intentionally treated differently from others similarly situated, and (2) there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). A plaintiff alleging a class of one violation must, *inter alia,* "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Green v. McLaughlin,* 480 F. App'x 44, 47 (2d Cir.2012) (quoting *Ruston v. Town Bd. for the Town of Skaneateles,* 610 F.3d 55, 59 (2d Cir.2010)) (internal quotation marks omitted).

In *Green,* a *pro se* prisoner case asserting a class of one claim, the Second Circuit held that where plaintiff described the inmates to which he compared himself as "other inmates at [the correctional facility] with medical holds," and "other inmates with acute medical problems," "[n]either of these broad categories [was] sufficient to demonstrate the level of specificity required by class-of-one claims as they do not permit an inference that the members of these classes are so similar [plaintiff] that no rational person could see them as different." 480 F. App'x at 47–48 (citing *Ruston,* 610 F.3d at 60) (internal quotation marks omitted). Moreover, and "[m]ost importantly," the plaintiff in *Green* "[did] not identif[y] any other similarly situated inmates with diabetes whose medical holds were not rescinded and who were allowed to remain at [the correctional facility]." *Id.* at 48.

*See also Ruston,* 610 F.3d at 59 (finding that plaintiffs' failure to allege "specific examples" of similarly situated persons receiving differential treatment from the defendant town was fatal to their "class of one" equal protection claim). Here, Plaintiff generally compares himself to other inmates with "infectious/communicable" diseases, which he alleges

include, but presumably is not limited to Hepatitis C, HIV, AIDS, MRSA, and Tuberculosis. As in *Green,* Plaintiff's category is too broad to survive dismissal since it does not allow an inference that the members of this class are so similar to Plaintiff that no one could view them as different. *Green,* 480 F. App'x at 47–48. Accordingly, Plaintiff's equal protection claims are DISMISSED.

### iv. Eighth Amendment Claims

**\*11** Plaintiff alleges that Defendants violated his Eighth Amendment rights by: (1) Nurse Furco's improper disclosure of his confidential medical information to nonmedical staff, which resulted in his being "shunned by certain inmates at Sing Sing in the manner of playing contact sports or sharing of cigarett[e]s," PL's Opp. Mem. Docs. 25–1 at 7, 9, 25–2 at 1; (2) Nurse Furco's attendance at the July 28 grievance hearing addressing her prior medical disclosure, Compl. at 5; (3) Superintendent Heath's failure to install handrails on a portion of prison walkway which Plaintiff alleges caused him to fall and injure his shoulder, *id.* at 8; and (4) Superintendent Heath's failure to correct a policy or custom of not accommodating disabled inmates. *Id.*

The Eighth Amendment provides that "cruel and unusual punishments [shall not be] inflicted," U.S. Const. amend. VIII, and "[t]hat rule, applicable to the states through the Fourteenth Amendment, ... is violated by unnecessary and wanton inflictions of pain and suffering." *Walker v. Schriro,* 11 Civ. 9299(JPO), 2013 WL 1234930, at \*11 (S.D.N.Y.Mar.26, 2013) (citations omitted). Prison officials are responsible for the safety of prison inmates; however, "[not] every injury suffered by one prisoner at the hands of another that translates into constitutional liability for [the] prison officials [involved]." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Rather, prison officials violate the Eighth Amendment only when two conditions are satisfied: (1) the alleged deprivation must, objectively speaking, be "sufficiently serious," and (2) the alleged perpetrator must possess a "sufficiently culpable state of mind." *Id.* (citations and internal quotation marks omitted). In the prison setting, "courts have defined this culpability as 'deliberate indifference' to the health and safety of inmates." *Randle v. Alexander,* 10 Civ. 9235(JPO), 2013 WL 2358601, at \*5 (S.D.N.Y. May 30, 2013) (citing *Farmer,* 511 U.S. at 834; *Wilson v. Seiter,* 501 U.S. 294, 302–04, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Estelle*

*v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

The objective analysis of the seriousness of the conduct in question requires an examination of the alleged unconstitutional conditions. Although the Constitution does not mandate a comfortable prison setting, *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), prisoners are entitled to "basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,* 489 U.S. 189, 199–200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)). Therefore, to establish the objective element of an Eighth Amendment violation, a prisoner "must prove that the conditions of his confinement violate contemporary standards of decency." *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir.2002).

To satisfy the subjective element, which hinges upon the accused prison official's subjective intent, the plaintiff must allege "something more" than mere negligence. *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir.2000) (quotations omitted). An injured prisoner can recover under the Eighth Amendment only if the injury was a product of the prison official's "purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the official's deliberate indifference to that risk." *Fischl v. Armitage,* 128 F.3d 50, 55 (2d. Cir.1997) (quoting *Farmer,* 511 U.S. at 834). An official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Cuoco,* 222 F.3d at 107 (citations and internal quotation marks omitted).

**\*12** Prisoners generally assert Eighth Amendment claims under three basic theories: (1) denial of proper medical care; (2) unconstitutional conditions of confinement unrelated to medical treatment; and (3) failure to protect against harm by other inmates. *See Randle,* 2013 WL 2358601, at \*6. Liberally reading the Complaint, Plaintiff here asserts Eighth Amendment claims under the second and third theories. [5]

### 1. *Failure to Protect: Nurse Furco's Disclosure of Hepatitis C Status*

Plaintiff alleges that Nurse Furco's disclosure of his Hepatitis C status exposed him to being "shunned by certain inmates at Sing Sing in the manner of playing contact sports or sharing of cigarett[e]s." Pl.'s Opp. Mem Docs. 25–1 at 7, 9, 25–2 at 1. Liberally construing Plaintiff's allegation, he alleges a failure to protect claim. As previously discussed, the Eighth Amendment "imposes a duty on prison officials to 'take reasonable measures to guarantee safety of the inmates.' "

Nunez v. Goord, 172 F.Supp.2d 417, 430 (S.D.N.Y.2001) (quoting Farmer, 511 U.S. at 832). Therefore, "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Hines v. Lacy,* No. 98–2961, 189 F.3d 460, at *3 (2d Cir. Aug.20, 1999) (citations and internal quotation marks omitted). To satisfy the objective component of a failure to protect claim, "the inmate must show that he is incarcerated under conditions posing a *substantial risk of serious harm."* Randle, 2013 WL 2358601, at *9 (quoting

Farmer, 511 U.S. at 835) (emphasis in original). The objective prong can be met even where the inmate does not actually suffer serious physical injury. *Id.* at *10 (quoting

Heisler v. Kralik, 981 F.Supp. 830, 836 (S.D.N.Y.1997), *aff'd sub nom. Heisler v. Rockland Cnty.,* 164 F.3d 618 (2d Cir.1998) ("[T]he Court does not accept defendants' position that prison officials are only liable for failing to protect an inmate from an attack by another inmate when a serious physical injury has resulted from the attack. If accepted, such an analysis would assess a prison official's actions based on hindsight, rather than on the facts and circumstances of which the official was aware at the time he acted or failed to act." (internal footnote omitted)). Therefore, "[i]n assessing whether the risk of an inmate's violence against other inmates is 'sufficiently serious' to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a 'substantial risk of serious harm.' " *Id.* (quoting Heisler, 981 F.Supp. at 837).

In *Powell,* the Second Circuit recognized that an Eighth Amendment violation could exist where the disclosure of an inmate's HIV status "place[s][an] inmate in harm's way."

Powell, 175 F.3d at 115. Here, while it is plausible that in certain circumstances, knowledge of an inmate's Hepatitis C state might create a substantial risk of serious harm, Plaintiff does not allege that the disclosure of his status exposed him to *any* danger, let alone substantial risk of serious harm. Plaintiff merely alleges that he was "shunned" by "certain inmates" when playing contact sports or sharing cigarettes.

PL's Opp. Mem. Docs. 25–1 at 7, 9, 25–2 at 1. *See* Dawes v. Walker, 239 F.3d 489, 494 (2d Cir.2001) (on a motion to dismiss, no substantial risk where plaintiff did not "contend that [fellow inmate] assaulted him ... threatened him with physical violence nor even that there were credible rumors that [fellow inmate] intended to attack him"), *overruled on other grounds,* Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Petty v. Goord, 00 Civ. 803(JSR), 2008 WL 2604809, at ——2, 5 (S.D.N.Y. June 25, 2008) (on summary judgment, "mere fact that [racial and HIV-based taunts by officer] may have subjected [plaintiff] to opprobrium cannot objectively be considered sufficiently serious to render the conditions of ... confinement inhumane"); Green v. City of New York Dep't of Corr., 06 Civ. 4978(LTS)(KNF), 2008 WL 2485402, at *6 (S.D.N.Y. June 19, 2008) ("Although the death threats alleged by Plaintiff were sufficiently *atypical and significant ...,* the mere existence of such threats, without any allegation that physical harm actually existed or was imminent during the entire six or seven month period in which he was allegedly subjected to such threats, or without any allegation that any inmate perceived to be a Neta member was physically harmed, do not render plausible Plaintiff's claim that he was subject to a *substantial risk of serious harm"* on a motion to dismiss) (emphasis in original). Absent the requisite substantial risk of serious harm, Plaintiff cannot prove a deliberate indifference claim.

**\*13** Nevertheless, even assuming that Plaintiff had alleged a substantial risk of serious harm from Nurse Furco's disclosure, Plaintiff has failed to adequately allege that Nurse Furco, or the other Defendants, knew of or disregarded the fact that her comments would subject Plaintiff to a substantial risk of serious harm. To satisfy the subjective prong, "the prison official [must] have a 'sufficiently culpable state of mind,' to wit, be deliberately indifferent to the harmful conditions." *Id.* at *9 (quoting Heisler, 981 F.Supp. at 836). In his Complaint, Plaintiff asserts that "it is emphatically impossible [for Nurse Furco] to inadvertently divulge information that one took an oath to uphold and protect ... [and instead acted] with motive, intent, recklessness and indifference." Compl. at 4. As previously discussed, however, Nurse Furco's disclosure was made in response to Plaintiff's discussion of his liver problems during the grievance hearing, and, according to Plaintiff, was "blurted

out" by her. *Id.,* Ex. C. At most, this disclosure could be characterized as negligent behavior, which is not actionable under Section 1983. Accordingly, to the extent that Plaintiff alleges an Eighth Amendment violation from Nurse Furco's disclosure, such a claim is DISMISSED.

2. *Nurse Furco's Presence at Second Grievance Hearing*
Plaintiff alleges that allowing Nurse Furco to attend the July 28, 2011 grievance hearing, even after he requested that she leave, demonstrates "deliberate indifference" in violation of the Eighth Amendment. Compl. at 5. Plaintiff, however, does not specify how her presence at the grievance hearing violated his rights, but this is essentially a claim that Nurse Furco interfered with Plaintiff's grievance process.

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005) (quoting *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)) (ellipsis in original). The law is clear that "prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment." *Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003) (citations omitted); *see also Pine v. Seally,* 09 Civ. 1198(DNH)(ATB), 2011 WL 856426, at *8 (N.D.N.Y. Feb. 4, 2011), *report and recommendation adopted in part sub nom. Labib v. Seeley,* 09 Civ. 1198, 2011 WL 856421 (N.D.N.Y. Mar.9, 2011) ("The law is well-settled that inmates do not have a constitutional right to grievance procedures"); *Shell v. Brzezniak,* 365 F.Supp.2d 362, 370 (W.D.N.Y.2005) ("inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable [Section] 1983 claim") (citation omitted). Accordingly, "[c]ourts regularly dismiss claims brought to remedy alleged violations of inmate grievance procedures." *Edwards v. Horn,* 10 Civ. 6194(RJS)(JLC), 2012 WL 473481, at *11 (S.D.N.Y. Feb. 14, 2012), *report and recommendation adopted,* 10 Civ. 6194(RJS) (JLC), 2012 WL 760172 (S.D.N.Y. Mar. 8, 2012) (citing *Muhammad v. McMickens,* 86 Civ. 7376(SWK), 1988 WL 7789, at *3 (S.D.N.Y. Jan. 25, 1988)). Accordingly, because Plaintiff's claim against Nurse Furco for alleged violation of the inmate grievance process has no constitutional basis, this claim is DISMISSED. *See id.*[6]

3. *Conditions of Confinement: Failure to Install Handrails in Walkway*
**\*14** Plaintiff also alleges that Superintendent Heath alone violated the Eighth Amendment by failing to install hand rails on the top portion of the walkway in the school tunnel, especially since the tunnel had already been "deem[ed] to be in need of repairs." Compl. at 8; Pl.'s Opp. Mem. Doc. 25 at 8. In his opposition papers, Plaintiff further alleges that Superintendent Heath "[d]id not make available another mode of travel within the facility to avoid the prospect of an injury occurring on the state property he was responsible for." PL's Opp. Mem. Doc. 25–2 at 5.[7] However, Plaintiff also admits that, at some unspecified point in time, he was "finally accommodated with a bus pass." *Id.* at 6. According to Plaintiff, "[t]his was done by the diligent efforts of plaintiff, via grievance and [the] medical department." *Id.* Reading the Complaint with special solicitude, Plaintiff asserts a conditions of confinement claim against Superintendent Heath for failing to install hand rails on the top portion of the walkway.

Prison officials may not expose inmates to conditions that "pose an unreasonable risk of serious damage to [their] health," *Helling,* 509 U.S. at 35, nor may States deprive prisoners of their "basic human needs," including "food, clothing, shelter, medical care, and reasonable safety." *Id.* at 32. As discussed above, "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson,* 501 U.S. at 298 (citation and internal quotation marks omitted). To satisfy the objective prong, a plaintiff "must prove that the conditions of his confinement violate contemporary standards of decency," *Phelps,* 308 F.3d at 185, and "only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim." *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.1999) (citing *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). Indeed, the Eighth Amendment "is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law." *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003).

Defendants argue that Plaintiff's allegation is simply a negligence claim, which is not actionable under 🔖 Section 1983. Defs.' Mem. 14 (citing *Flowers v. City of New York,* 668 F.Supp.2d 574, 578 (S.D.N.Y.2009) ("Any claim against the City for the slip and fall [in shower] that resulted in [inmate] plaintiff's ankle injury—a garden variety tort—is not cognizable under 🔖 Section 1983 ....")). The Court agrees and finds that the lack of handrails—even in light of a walkway renovation—does not constitute a violation of the Eighth Amendment. 🔖 *Shariff v. Coombe,* 655 F.Supp.2d 274, 300–01 (S.D.N.Y.2009). In *Shariff,* the plaintiffs, disabled inmates who depend on wheelchairs for mobility, alleged that they had fallen and suffered injuries as a result of the presence of potholes and broken concrete in the prison yards. 🔖 655 F.Supp.2d at 300. In granting summary judgment on this claim, the court held that plaintiffs' allegations fell short of the type of condition that is proscribed by the Eighth Amendment. Specifically, the court noted:

> **\*15** Just as courts have found that wet or slippery floors or a prison's failure to equip showers with non-slip mats are not the types of conditions warranting relief under the Eighth Amendment, it appears to the Court that a potholed recreation yard similarly does not run afoul of the Constitution. *See, e.g.,* 🔖 *Adams v. Perez,* No. 08 Civ. 4834(BSJ)(MHD), 2009 WL 513036, at \*3 (S.D.N.Y. Feb. 27, 2009) (stating that courts have repeatedly held that 'a failure on the part of prison officials to provide shower mats does not rise to the level of a constitutional violation'); *Sylla v. City of New York,* No. 04–cv–5692 (ILG), 2005 WL 3336460, at \*3 (E.D.N.Y. Dec. 8, 2005) (explaining that '[c]ourts have regularly held that a wet or slippery floor does not pose an objectively excessive risk to prisoners'); *Williams v. Dillon,* No. 93–3127–DES, 1993 WL 455442, at \*1 (D.Kan. Oct.28, 1993) (observing that '[e]ven if the absence of a shower mat contributed to plaintiff's fall, it would still fail to evidence the kind of condition proscribed under the eighth amendment').

*Id.* at 300–01. *Compare Carr v. Canty,* 10 Civ. 3829(JPO), 2012 WL 3578742, at \*2 (S.D.N.Y. Aug. 16, 2012) ("Plaintiff's allegation that a floor at Rikers Island was flooded by a broken pipe [for approximately four months] does not satisfy the first prong of stating a conditions-of-confinement claim"); 🔖 *Adams,* 2009 WL 513036, at \*3 ("Thus, even assuming Defendants were aware that inmate

showers were not equipped with rubber mats—both before Plaintiff filed her grievance and after Plaintiff's grievance was granted—Plaintiff is not entitled to relief because Defendants' transgression was not 'sufficiently serious' ") *and Dorsey v. Clark,* 05 Civ. 1239(MEF), 2007 WL 1266857, at \*4 (M.D.Ala. May 1, 2007) (holding that plaintiff's allegation that jailers failed to repair a broken handrail in a stairwell "suggests nothing more than a lack of due care in the nature of negligence," and is insufficient to establish a constitutional violation), *with Armstrong v. Breslin,* 05 Civ. 2876(ARR), 2006 WL 436009, at \*3 (E.D.N.Y. Feb. 22, 2006) (finding sufficient pleading of the objective prong of the deliberate indifference test when plaintiff alleged that failure to provide ladder access to ascend to and descend from a top bunk in a prison cell posed a sufficiently serious risk to his safety. The court noted that, in addition to providing evidence of injuries sustained due to the lack of a ladder, plaintiff "support[ed] his claim that the bunk bed configuration posed a safety risk to inmates by demonstrating that there were grievances made by other inmates about the lack of ladders and safety railings on the bunk beds"). Here, the Court finds that the alleged failure to provide handrails on a limited portion of a prison walkway does not amount to an Eighth Amendment violation.

The Complaint also fails to satisfy the subjective component of the deliberate indifference test because "the question is whether Defendant[ ] [Heath's] disregard for a known danger precipitated Plaintiff's injury." *Carr,* 2012 WL 3578742, at \*2 (finding that "Plaintiff's argument that Defendants showed deliberate indifference by failing to repair the pipe *after* Plaintiff's fall is unavailing because the question is whether Defendants' disregard for a known danger precipitated Plaintiff's injury.") (emphasis in original); *Munoz v. Superintendent/Warden,* 11 Civ. 0111(DNH)(GHL), 2011 WL 5080258, at \*3 (N.D.N.Y. Sept. 29, 2011), *report and recommendation adopted,* 11 Civ. 111, 2011 WL 5080240 (N.D.N.Y. Oct.25, 2011) ("On subjective grounds, courts have found that allegations like Plaintiff's fail to state a claim except where the prisoner alleges that he or she actually informed the defendant about the dangerous condition."). Under the subjective test, a defendant must be ' "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, ... draw the inference and fail to take reasonable measures to abate it.' " *Jackson v. Goord,* 664 F.Supp.2d 307, 316 (S.D.N.Y.2009) (quoting 🔖 *Trammell v. Keane,* 338 F.3d 155, 164 (2d Cir.2003)). Here, Plaintiff does not allege that he informed anyone, much less Superintendent Heath, about the allegedly dangerous condition. *Compare Spencer v. Sylvester,* 97 Civ. 5491, 1999

WL 61644, at *3 (E.D.N.Y. Feb.2, 1999) (dismissing Eighth Amendment claim where plaintiff did not allege that warden defendant was aware of slippery conditions on stairs and landing or that he was deliberately indifferent to the alleged conditions); *with Smolen v. Fischer,* 12 Civ. 1856(PAC) (AJP), 2012 WL 3609089, at ——6–7 (S.D.N.Y. Aug. 23, 2012) (finding adequate pleading of the subjective element when plaintiff asserted, *inter alia,* that prison officials knew that storm windows were made of poly-carbon and highly flammable, knew of the hazard of the windows from previous fires, knew that most cell window knobs were missing, which made it impossible to open the windows in the event of a fire, and that any time a serious fire broke out at the facility, a full report of the fires and their cases had to be submitted to the one of the defendants); and *Howard v. Headley,* 72 F.Supp.2d 118, 124 (E.D.N.Y.1999) (holding that inmate required to perform sanitation duties despite pre-existing medical condition stated an Eighth Amendment claim against defendant prison officials, where the inmate alleged he informed officials that he could not perform work and provided them doctor's notes to support his claim). Plaintiff here merely asserts that there were plans to renovate the tunnel, and that the plans for renovation presumably indicated that the tunnel was unsafe. *See* Compl. at 8; PL's Opp. Mem. Doc. 25–2 at 6 (after discussing Superintendent Heath's indication that the tunnel was scheduled for repairs, Plaintiff states: "The deliberate indiffernce [sic] component sets in when upon being notified that a pre-exiting hazard was prevalent in the walkway area, nothing had been done ...."). However, the CORC response to Plaintiff's grievance appeal indicates that while the tunnel was scheduled to be renovated, there were no plans to install handrails. CORC also indicated that the plans were code compliant, indicating that the decision to renovate was not prompted by any issue arising from the lack of handrails. Defs.' Mem. 28. Thus, no inference can be drawn that prison officials, specifically Superintendent Heath, knew of any dangerous condition occasioned by the lack of handrails because of the plans to renovate the walkway. Moreover, a thorough review of the Complaint, and exhibits attached thereto, reveal that Superintendent Heath only became aware of the lack of handrails during Plaintiff's post-injury grievance process. Compl., Exs. M–O. Accordingly, Plaintiff's conditions of confinement claim is DISMISSED.

#### 4. *Failure to Accommodate Disabled Inmates*

**\*16** Relatedly, Plaintiff asserts that Superintendent Heath failed to correct a policy or custom of not accommodating disabled inmates, Compl. at 8, and, as an example of this policy, cites the failure "to accommodate inmates with disabilities by ensuring that that handrails were [placed] throughout the walkway that had already been deem[ed] to be in need of repairs." *Id.* In *Nilsson v. Coughlin,* 86 Civ. 7135(LLS), 1987 WL 12823 (S.D.N.Y. June 18, 1987), the plaintiff claimed that the prison administration was "completely indifferent to plaintiff's as well as other inmates' safety because they don't repair area's [sic] that are in the state of disrepair ...." 1987 WL 12823, at *3 (citation omitted). In support of such claim, plaintiff cited to one unrepaired step, over which he and another inmate tripped. The court held that plaintiff's "conclusory allegations" failed to state a violation of the Eighth Amendment. *Id.; see also Castillo v. Comm'r N.Y.S. Dep't of Corr. Servs.,* 06 Civ. 858A, 2008 WL 4501881, at *2 (W.D.N.Y. Sept.30, 2008) ("Although plaintiff does allege that the defendants have 'have adopted polices, practices and procedures which Defendants knew or should have reasonably known would be ineffective in delivering medical treatment and care,' [citation omitted], such conclusory allegations are insufficient to sustain a § 1983 claim.").

Furthermore, Plaintiff has also failed to allege sufficient personal involvement by Superintendent Heath to establish supervisory liability under 42 U.S.C. § 1983. "There is no *respondeat superior* liability in § 1983 cases." *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir.1995) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (citation and internal quotation marks omitted). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676. "A supervisory official personally participates in challenged conduct not only by direct participation, but by (1) failing to take corrective action; (2) creation of a policy or custom fostering the conduct; [or] (3) grossly negligent supervision, or deliberate indifference to the rights of others." *Rolon v. Ward,* 345 F. App'x 608, 611 (2d Cir.2009) (summary order).

A plaintiff must adequately allege facts to support a determination of supervisory liability and "conclusory, unsupported allegations of gross negligence or the existence

of a policy are simply insufficient to establish liability of supervisory prison officials under § 1983." *Parris v. N.Y.S. Dep't Corr. Servs.,* 12 Civ. 1849(JGK), 2013 WL 2257096, at *6 (S.D.N.Y. May 23, 2013) (citations and internal quotation marks omitted). Furthermore, "[a]llegations involving only a single incident are generally insufficient to demonstrate the existence of an official policy or custom for purposes of establishing personal involvement under § 1983." *Id.* (citing *Strano v. City of New York,* 97 Civ. 0387(RPP), 1998 WL 338097, at *5 (S.D.N.Y. June 24, 1998)); *see also id.* (" '[A]llegations as to defendants' knowledge of alleged constitutional violations [are] insufficient to impose supervisory liability' under § 1983 unless accompanied by allegations that the defendants had direct responsibility for monitoring the alleged violation or that there had been a 'history of previous episodes' putting the defendants on notice of the problem," citing *Candelaria v. Coughlin,* 91 Civ. 1117(LBS), 1991 WL 113711, at *2 (S.D.N.Y. June 11, 1991)).

**\*17** Plaintiff here alleges that Superintendent Heath did not correct a policy or custom of failing to accommodate disabled inmates but fails to site to any instances of such a policy, other than discussing the failure to provide a railing on the top portion of the walkway. *Castillo,* 2008 WL 4501881, at *2 (citing *Covington v. Coughlin,* 93 Civ. 8372(JSM), 1994 WL 163692, at ——2–3, (S.D.N.Y. Apr. 28, 1994) (finding that a "vague reference" to alleged unconstitutional policy is insufficient to establish personal involvement); *id.* (citing ⚠ *Funches v. Reish,* 97 Civ. 7611(LBS), 1998 WL 695904 (S.D.N.Y. Oct. 5, 1998) (dismissing deliberate indifference to medical care claim against warden of prison facility based upon conclusory allegation that warden created "custom" of denying medical care)). Plaintiff's allegation fails to demonstrate that a policy or custom of failing to accommodate disabled inmates was in place at Sing Sing. *Parris,* 2013 WL 2257096, at *6. Furthermore, Plaintiff fails to allege that Superintendent Heath was aware of such alleged policy and, accordingly, Plaintiff's conclusory allegations are insufficient to demonstrate the personal involvement of Superintendent Heath. Accordingly, Plaintiff's claim against Superintendent Heath on failure to accommodate disabled inmates is DISMISSED.

#### c. HIPAA Claim

Plaintiff asserts that Defendants violated HIPAA's medical privacy regulations by Nurse Furco's allegedly improper disclosure of his Hepatitis C status during the July 21 grievance hearing. HIPAA established standards for the protection of individual health information, and allowed the promulgation of regulations designed to protect the privacy and accuracy of individually identifiable health information. *Morris v. NYC HRA,* 13 Civ. 1845(RRM)(MDG), 2013 WL 3148664, at *4 (E.D.N.Y. June 19, 2013) (citing 42 U.S.C. §§ 1320d–1320d–8). However, HIPAA does not provide a private cause of action through which individuals can enforce its provisions. *Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of Am.,* 639 F.Supp.2d 371, 377 (S.D.N.Y.2009) (collecting cases for proposition that HIPAA does not provide a private right of action); *Ames v. Group Health Inc.,* 553 F.Supp.2d 187, 192 (E.D.N.Y.2008) (finding that case law is "clear that plaintiffs cannot bring a HIPAA enforcement action due to improper disclosures of medical information."). Enforcement of HIPAA is limited to the Secretary of Health and Human Services. 42 U.S.C.A. § 300gg–22; *see Shallow v. Scofield,* 11 Civ. 6028(JMF), 2012 WL 4327388, at *4 (S.D.N.Y. Sept. 21, 2012) (dismissing HIPAA claim because it does not create a private right of action, but rather allows authorized state authorities to bring an enforcement action). Accordingly, Plaintiff's HIPAA claims against Defendants are DISMISSED.

#### d. ADA Claim

In relation to his Eighth Amendment conditions of confinement and failure to accommodate disabled inmates claims, Plaintiff alleges that he is disabled under the ADA. PL's Opp. Mem. Doc. 25–2 at 6 (after discussing Superintendent Heath's indication that the tunnel was scheduled for repairs, Plaintiff states: "The deliberate indifference [sic] component sets in when upon being notified that a pre-exiting hazard was prevalent in the walkway area, nothing had been done nor had the defendant sought accommodations for the plaintiff or accommodate plaintiff in accordance with the [ADA] requirements for disabled persons."). He asserts that he suffers from five "impairments" which he believes classify him as disabled under the ADA: (1) Hepatitis C; (2) drug addiction and alcoholism; (3) Post Traumatic Stress Disorder; (4) rheumatoid arthritis/neuropathy; and (5) cosmetic disfigurement. PL's Opp. Mem. Doc. 25–1 at 8. Although Plaintiff does not actually assert an ADA claim, but rather states that he qualifies as an individual with a disability under the statute, the Court will treat this allegation as asserting a claim under the ADA. [8] Defendants do not

address the validity of any potential ADA claims in their papers.

**\*18** To the extent that Plaintiff is suing Defendants in their individual capacities, it is well settled that Title II of the ADA does not authorize such actions. *See Browdy v. Karpe,* 131 F. App'x 751, 753–54 (2d Cir.2005) ("Title II of that statute does not provide for individual capacity suits against state officials.") (citation omitted); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir.2001); *Andino v. Fischer,* 698 F.Supp.2d 362, 380 (S.D.N.Y.2010). Accordingly, any individual capacity claims are dismissed.

However, "[w]hether Defendants are subject to suit in their official capacities, ... is '[l]ess amenable to a tidy answer.' " *Davis v. Pallito,* 10 Civ. 154, 2011 WL 4443026, at \*5 (D.Vt. June 16, 2011), *report and recommendation adopted,* 10 Civ. 154, 2011 WL 4443008 (D.Vt. Sept.22, 2011) (quoting *Cole v. Goord,* 05 Civ. 2902(GEL), 2009 WL 2601369, at \*4 (S.D.N.Y. Aug. 25, 2009)). Accordingly, to determine the viability of Plaintiff's ADA claim, the Court must first consider the Eleventh Amendment's limitations upon federal court jurisdiction over suits against states. As explained by the court in *Andino:*

> To determine whether there has been a valid abrogation of sovereign immunity for purposes of a private action for damages under Title II of the ADA, the Court should apply the three-part test presented in *United States v. Georgia,* wherein the reviewing court shall determine, on a claim-by-claim basis " '(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II, but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.' " [ *Goonewardena v. New York,* 475 F.Supp.2d 310, 323 (S.D.N.Y.2007) ] (quoting *U.S. v. Georgia,* 546 U.S. 151, 159, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006)). *If the court concludes there was no violation of Title II, the claim should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. Goonewardena,* 475 F.Supp.2d at 323.

698 F.Supp.2d at 377 (emphasis added). After careful review, the Court here finds that Plaintiff has failed to allege

an ADA violation, and, accordingly, the claim should be dismissed.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To assure that these requirements are satisfied, "reasonable accommodation" may have to be provided to the qualified individual. *Henrietta D. v. Bloomberg,* 331 F.3d 261, 273–74 (2d Cir.2003); *see also Felix v. N.Y.C. Transit Authority,* 324 F.3d 102, 107 (2d Cir.2003). To establish an ADA violation, a plaintiff must show: (1) that he is a "qualified individual" with a disability; (2) that the defendants are subject to the ADA; and (3) that the plaintiff was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [his] disabilit[y]." *Henrietta D.,* 331 F.3d at 272. The Supreme Court has held that the ADA extends to state prisons. *Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 209, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) ("[T]he statute's language unmistakably includes State prisons and prisoners within its coverage.").

**\*19** Here, however, the Court need not engage in an extensive analysis of the ADA requirements because Plaintiff makes absolutely no allegation that he was discriminated against, or that Defendants failed to provide him with a reasonable accommodation—i.e., railings on the walkway or an alternative to traveling through the walkway—*because* of his disability. *Henrietta D.,* 331 F.3d at 278 (stating that an ADA plaintiff must demonstrate that a denial of benefits occurred "because of" the disability). Moreover, the evidence submitted by Plaintiff demonstrates that he was eventually accommodated with a bus pass. PL's Opp. Mem. Doc. 25–2 at 6. Thus, Plaintiff's ADA claim is DISMISSED.

### e. State Law Claims

Federal courts have supplemental jurisdiction over state law claims if they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). Nevertheless, a district court may decline to exercise supplemental jurisdiction when "the district court has

dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *accord* United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 61 (2d Cir.1998); Lennon v. Miller, 66 F.3d 416, 426 (2d Cir.1995). Plaintiff asserts state law claims against the Defendants for violations of New York Public Health Law and New York Public Officer Law. In addition, the Complaint liberally construed may also assert a negligence claim against Superintendent Heath for failing to properly maintain the walkway. Having dismissed all of Plaintiff's federal claims under Rule 12(b)(6), it would be inappropriate to adjudicate his state law claims, and thus the Court declines to exercise supplemental jurisdiction over these claims.

### f. Leave to Amend the Complaint

Although Plaintiff has not requested leave to amend or replead his Complaint, the Court has considered whether Plaintiff should be given an opportunity to replead. The Second Circuit has explained that "[a] *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco, 222 F.3d at 112 (citations and internal quotation marks omitted). Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile. As discussed in detail above, it is clear from the Complaint that plaintiff does not have any possibility of asserting plausible Section 1983 or ADA claims for Nurse Furco's disclosure of his medical information and his slip and fall in the walkway of the prison. *See* Cuoco, 222

F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see also* Hayden, 180 F.3d at 53 (holding that if plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied."). Additionally, the Court has already taken into account Plaintiff's opposition papers, in which Plaintiff attempted to provide additional factual support for his claims. Because this additional information proved insufficient to state a viable claim against Defendants, further amendment would be futile. Therefore, Plaintiff's claims are dismissed with prejudice. Hobson v. Fischer, 10 Civ. 5512(SAS), 2011 WL 891314, at *6 (S.D.N.Y. Mar. 14, 2011). [9]

### III. Conclusion

**\*20** For the reasons set forth above, Defendants' motion to dismiss the Complaint in its entirety is GRANTED. The Clerk of the Court is respectfully directed to terminate these motions (Docs.25, 29), to mail a copy of this Opinion and Order to Plaintiff, and to close this case.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a) (3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See* Coppedge v. United States, 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 3972514

---

### Footnotes

1    The Court notes that the pagination in the Complaint is haphazard. Accordingly, the Court cites to the document and page number designation on the Court's electronic filing system (ECF/Pacer).

2    A review of the ECF/Pacer page and the Court's records indicates that Defendants' moving papers were inadvertently docketed several weeks after Defendants had submitted their papers.

3    Although this Court's individual rules require a party to obtain the Court's permission prior to the filing of a surreply, *see* Individual Rule 2.B.i., in light of Plaintiff's *pro se* status, the Court will accept this filing and

consider it to the extent that it is relevant. Moreover, although courts generally "may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss," the mandate "to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials." *Gadson v. Goord,* No. 96 Civ. 7544(SS), 1997 WL 714878, at \*1 n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (considering *pro se* plaintiff's affidavit in opposition to defendant's motion to dismiss)). Accordingly, where a *pro se* plaintiff is faced with a motion to dismiss, a court may consider materials outside the complaint "to the extent that they are consistent with the allegations in the complaint." *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). The Court therefore considers the factual allegations contained in Plaintiff's opposition papers, including his surreply, to the extent that they are consistent with the allegations contained in the Complaint.

4    The Court notes that persons with disabilities are not considered to be a suspect class for equal protection purposes, and, accordingly, a claim asserting differential treatment based on disability is reviewed pursuant to rational basis scrutiny. *Bowens v. Fed. Bureau of Prisons,* 12 Civ. 5591(PKC), 2013 WL 3038439, at \*8 (S.D.N.Y. June 18, 2013) (citing *Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 366–67, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001)).

5    Although Plaintiff's Complaint and memoranda include documentation of medical treatment following his fall in the walkway, he does not challenge the care he received and the Court does not read the Complaint to assert a violation for improper medical treatment for his injuries. *See generally* Pl.'s Opp. Mem. Doc. 25–213 (discussing that Plaintiff "is not claiming a SLIP AND FALL lawsuit, rather [he] is proclaiming that [D]efendant Heath is responsible for failing to provide a [n] environment free of safety hazards which included handrails throughout a section of the prison that was degenerant [sic] and decadent, in need of repairs.").

6    To the extent that Plaintiff's Complaint can be construed to allege a constitutional violation from Superintendent Heath's failure to accept Plaintiff's grievance filing, Compl. at 7–8, such a claim is DISMISSED under the same grievance procedure rationale.

7    Plaintiff also alleges that: "The deliberate indifference component sets in when upon being notified that a pre-exiting hazard was prevalent in the walkway area, nothing had been done nor had the defendant sought accommodations for the plaintiff or accommodate plaintiff in accordance with the Americans with Disability Act requirements for disabled persons." Pl.'s Opp. Mem. Doc. 25–2 at 6. The Court addresses Plaintiff's ADA claim below.

8    Plaintiff seeks compensatory and punitive damages for all alleged violations, and has not requested any injunctive or other equitable relief. Compl. at 11.

9    Since Plaintiff fails to state a claim that Defendants violated his constitutional rights, HIPAA, or the ADA, the Court need not address the parties' additional arguments regarding personal involvement, supervisory liability and qualified immunity. *Gonzalez v. Sarreck,* 08 Civ. 3661, 2011 WL 5051341, at \*21 (S.D.N.Y. Oct.24, 2011) ("Because of other above[-]mentioned reasons to dismiss [plaintiff's] claims, the issue of whether Defendants were protected by the Eleventh Amendment or qualified immunity is moot and no judgment is made concerning the applicability of these defenses"); *Pecou v. Forensic Comm. Pers.,* 06 Civ. 3714(SJF) (LB), 2010 WL 2787588, at \*9 n. 8 (E.D.N.Y. May 14, 2010), *report and recommendation adopted,* 06 Civ. 3714(SJF)(LB), 2010 WL 2787587 (E.D.N.Y. July 9, 2010).

---

**End of Document**    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 4779639
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Carlos RODRIGUEZ et al, Plaintiffs,
v.
Erik RODRIGUEZ et al, Defendants.

No. 10 Civ. 00891(LGS).
|
July 8, 2013.

*MEMORANDUM AND ORDER*

LORNA G. SCHOFIELD, District Judge.

**\*1** Plaintiffs Carlos Rodriguez, Michelle Seda and Doris Velez (collectively "Plaintiffs") bring this action against various defendants, including Beverly Johnson, Plaintiff Rodriguez's parole officer, pursuant to 42 U.S.C. § 1983. Presently before the Court is the motion of Defendant Johnson to dismiss the claims against her, pursuant to Federal Rule of Civil Procedure 12(b)(6) because (i) they fail to state a claim for relief, (ii) Defendant Johnson is entitled to qualified immunity and (iii) the claims are time-barred.

For the reasons stated below, Defendant Johnson's motion is granted.

**I. Background**

**A.** Relevant Procedural History

Plaintiff Carlos Rodriguez initiated this civil rights action on December 23, 2009, against various entities and individuals associated with the New York Police Department ("NYPD") and the New York District Attorney's Office. Defendant Johnson was not named originally as a defendant. On December 30, 2010, Judge Barbara Jones, to whom this case was then assigned, granted the defendants' motions to dismiss, in part, and dismissed all but three defendants from the case (defendant NYPD police officers Erik Rodriguez, Cecilio Cintron and Patrick Bubb). (Dkt. No. 28). Magistrate Judge Katz granted Plaintiff Rodriguez's motion to file an amended complaint, in part, on October 24, 2011. (Dkt. No. 35).

Plaintiffs filed the First Amended Complaint on January 24, 2012, which added (1) two additional plaintiffs (Michelle Seda and Doris Velez), (2) five new defendants, including Defendant Johnson, the movant here, as well as four NYPD officers (Ohmeed Davodian, Paul Trapani, Frankie Rivera and Oscar Diaz (the "NYDP Officers")) and (3) a claim that in conducting a search on June 18, 2009 (the "June 18 Search"), Defendant Johnson and the NYPD Officers violated Plaintiffs' right to be free of unreasonable searches under the Fourth Amendment. (Dkt. No. 40).

Plaintiffs' Second Amended Complaint was filed July 3, 2012 and docketed July 9, 2012. (Dkt. No. 50). The Second Amended Complaint omits certain claims that Magistrate Judge Katz determined could not proceed, but otherwise contains the same causes of action concerning the same incidents as the First Amended Complaint. Although some of the details vary slightly, the allegations related to Defendant Johnson in the two amended complaints are substantially similar.

**B.** Factual background

The facts are drawn from various pleadings and documents filed in this matter. Although the Court is typically confined to "the allegations contained within the four corners of the complaint, Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir.1998), when analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings. See Torrico v. Int'l Bus. Machs. Corp., 213 F.Supp.2d 390, 399 n. 4 (S.D.N.Y.2002) (Lynch, J.). Defendant incorrectly argues that the Court must consider statements from only the current, operative complaint, relying mainly on cases where the issue of considering extraneous material arose on a summary judgment motion, and with plaintiffs who were represented by counsel. See Scott v. City of New York Dep't of Correction, 641 F.Supp.2d 211, 229 (S.D.N.Y.2009), aff'd, 445 F. App'x 389 (2d Cir.2011) (declining to consider new factual allegations raised for the first time in opposition to a motion for summary judgment where plaintiff currently represented by counsel); Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals, 812 F.Supp.2d 357, 363 n. 9 (S.D.N.Y.2011) (declining to consider facts raised for first time in opposition to motion for summary judgment where plaintiff represented by counsel); Southwick Clothing LLC v. GFT (USA) Corp., No. 99

Civ. 10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) (same). In pro se cases, a court may consider new allegations raised by the plaintiff in opposition to a motion to dismiss. *See, e.g.,* Torrico, 213 F.Supp.2d at 399 n. 4; *Agu v. Rhea,* No. 09 Civ. 4732, 2010 WL 5186839, at *4 n. 6 (E.D.N.Y. Dec. 15, 2010) ("On a motion to dismiss, the Court can consider documents that a pro se litigant attaches to his opposition papers."); *Graves v. MidHudson,* No. 04 Civ. 3957, 2005 WL 1377948, at *1 (E.D.N.Y. June 9, 2005) ("[I]n addition to the allegations included in the Amended Complaint, the Court should consider allegations contained in the other court filings of a pro se plaintiff.' " (quoting Swofford v. Mandrell, 969 F.2d 547, 549 (7th Cir.1992) (alterations omitted))); *Odom v. Calero,* No. 06 Civ. 15527, 2008 WL 449677, at *1 (S.D.N.Y. Feb. 19, 2008) ("[T]he mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum" (quoting Burgess v. Goord, No. 98 Civ. 207, 1999 WL 33458, at *1 n. 1 (S.D.N.Y. Jan. 26, 1999))); *but see Williams v. U.S. Info. Sys, Inc.,* 2013 WL 214318, at *4 n. 4 (S.D.N.Y. Jan. 17, 2013)) (stating that the court cannot consider allegations outside the operative complaint raised by pro plaintiff in opposition to a motion to dismiss). In any event, if statements made outside the operative complaint demonstrate that a pro se plaintiff could state a claim, if allowed to amend, the Court must grant leave to amend. *See* Torrico, 213 F.Supp.2d at 400 n. 4. Consequently, here the Court considers statements from Plaintiffs' Second Amended Complaint, First Amended Complaint, opposition and surreply in analyzing whether the June 18 Search allegations state a claim, or could state a claim if allowed to amend.

**\*2** Plaintiffs allege that the defendants violated the Fourth Amendment in the conduct of three distinct searches that occurred on three different days. For the present motion, only the June 18 Search is at issue because this is the only search in which Defendant Johnson was involved.

Plaintiffs allege that at around 9:35 p.m., two parole officers —Defendant Johnson and Parole Officer Pitchardo, who is not a defendant in this matter—requested to enter the apartment at 101 Post Avenue, in the County and State of New York, where the three Plaintiffs resided. (Sec.Am.Compl.¶ 24). At the time, Plaintiff Rodriguez was a parolee of the Department of Corrections and Community Supervision, Board of Parole. (Sec.Am.Compl.¶ 3). Plaintiff Rodriguez admitted the parole officers to the apartment and showed

them his room. After viewing Rodriguez's room, Defendant Johnson followed a non-resident, Lisabeth Franco, out of the apartment. (Sec.Am.Compl.¶ 25). Parole Officer Pitchardo exited the apartment with Defendant Johnson. (First Am. Compl. ¶ 43).

Moments after the parole officers left the apartment, the NYPD Officers and other unidentified police officers entered the apartment without the authorization or consent of the residents. (Sec. Am. Compl. ¶ 25; Surreply at 3, Dkt. No. 79). Plaintiff Rodriguez asked to see a search warrant, and Defendant Davodian told him that a search warrant was not required. (*Id* ). When asked if he had any contraband, Plaintiff produced a bottle of steroids and syringes from the desk in his room. (Sec.Am.Compl.¶ 28). The NYPD Officers then removed Plaintiff Rodriguez from his room to the hallway of the apartment and searched his room, after which they searched the hallway, closets and bathroom in the apartment. (Sec.Am.Compl.¶ 28). In both the First Amended Complaint and the opposition to the instant motion, Plaintiffs assert that the NYPD Officers discovered "a large quantity of marijuana, United States currency, drug paraphernalia, and a .45 automatic hand gun" in the bathroom of the apartment. (First Amended Complaint ¶ 51; Rodriguez's Opp. at 2). Plaintiff Rodriguez then was arrested and removed from the apartment to the hallway steps of the building. (Sec.Am.Compl.¶ 29).

Plaintiffs further allege that after the NYPD Officers discovered the contraband items, "they attempted to get a search warrant, via telephone," but that the request for a search warrant was denied. (Opp. at 2). The NYPD Defendants then contacted Defendant Johnson and explained that their request for a search warrant had been rejected. (*Id.* at 3). Defendant Johnson returned to the apartment and "took the credit for all the contraband that [had been] discovered" by the NYPD Defendants. (*Id; see also* First Am. Compl. ¶¶ 57–58). Defendant Johnson falsely accused Plaintiff Rodriguez of removing two knives from a drawer in his bedroom when, in fact, the knives had been part of a religious statue in the front entry to the apartment. [1] (Sec.Am.Compl. ¶ 32).

**\*3** The criminal complaint about the June 18 Search, filed by Defendant Diaz and appended to the First Amended Complaint as Exhibit M, does not corroborate Plaintiffs' claim that Defendant Johnson "took credit" for the search and seizure. Exhibit M states, that according to Defendant Johnson, Plaintiff Rodriguez provided the apartment address to the Division of Parole as his residence, and that Defendant

Johnson saw him and Franco inside the apartment, and inside the bathroom where the contraband was found. Exhibit M does not say that Defendant found the contraband. Rather, it says that Defendant Davodian found the marijuana and the handgun. Exhibit M does not mention other contraband.

After returning to the apartment for a few minutes, Defendant Johnson left again, passing Plaintiff Rodriguez, who was still detained in the stairway, "tapping" him on the head as she left the building. (Sec.Am.Compl.¶ 30). Plaintiffs allege that when Plaintiff Rodriguez was escorted out of the building, he saw that Franco had been detained. (First Am. Compl. ¶ 53). Franco was charged with criminal possession of a weapon and marijuana, although the charges against her were later dismissed. (First.Am.Compl.¶ 61). Defendant Diaz escorted both Plaintiff Rodriguez and Franco to the 34th precinct, New York County. (First Am. Compl. ¶ 54). Plaintiffs also allege that the NYPD Officers removed Velez, Seda and Seda's granddaughter from the apartment, advising them that they had to find somewhere else to sleep. (Sec.Am.Compl.¶ 31).

In his surreply, Plaintiff Rodriguez states that during a violation of parole hearing on August 3, 2009, Defendant Johnson stated:

> On June 18, 2009, Manhattan III did a special ops along with the New York City Police Department and at the time we were doing robbery cases and we were doing violent felony offense cases at that time. We had approximately 14 cases to do that evening.

(Dkt. No. 79). Defendant Johnson's parole was subsequently revoked, resulting in his current incarceration.

## II. Discussion

### A. Standard of Review

On a motion to dismiss, this Court accepts as true all well pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir.2010). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* While " 'detailed factual allegations,' " are not necessary, the pleading must be supported by more than mere " 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action.' " *Id.* (quoting *Twombly,* 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement' " *Id.* (quoting *Twombly,* 550 U.S. at 557). Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Anderson News, L.L. C. v. Am. Media, Inc.,* 680 F.3d 162, 182 (2d Cir.2012), *cert. denied,* 133 S.Ct. 846 (2013) (quoting *Twombly,* 550 U.S. at 555). Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown —that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (internal punctuation omitted); *see also* Fed.R.Civ.P. 8(a) (2).

**\*4** In addressing the claims by plaintiffs proceeding pro se, the Court must construe such complaints liberally, "applying a more flexible standard to evaluate their sufficiency than [it] would when reviewing a complaint submitted by counsel."

*Lerman v. Bd. of Elections in City of N.Y.,* 232 F.3d 135, 139–40 (2d Cir.2000) (quoting *Elliot v. Bronson,* 872 F.2d 20, 21 (2d Cir.1989)); *see Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). Thus, the Court is obligated to construe pro se pleadings "liberally to raise the strongest arguments [they] suggest." *Torrico v. Int'l Bus. Machs. Corp.,* 213 F.Supp.2d 390, 400 (S.D.N.Y.2002).

### B. Fourth Amendment and Searches of Parolees

Defendant Johnson argues that Plaintiffs fail to state a claim against her under the Fourth Amendment for illegal search. Defendant Johnson contends that, as Plaintiff Rodriguez's parole officer, she acted reasonably and that the June 18 Search was rationally related to her duties as a parole officer.

The Court agrees that the allegations related to Defendant Johnson's direct involvement in the June 18 Search (namely the initial search of Plaintiff Rodriguez's room) do not state a claim for a constitutional violation. Likewise Plaintiffs' claim that Defendant Johnson aided and abetted the NYPD Officers in an unconstitutional search fails, because as discussed below, the Court concludes that the underlying police search was lawful.

### 1. Parole officers and reasonable searches

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. Although warrantless searches are generally presumed unreasonable, in some circumstances, such as "[w]hen faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like," the Supreme Court has held that a warrantless search or seizure may be reasonable. Maryland v. King, 133 S.Ct. 1958, 1970 (2013) (quoting Illinois v. McArthur, 531 U.S. 326, 330 (2001)).

In light of the government's substantial interest in supervising parolees, a parolee has diminished expectations of privacy, which are less than those of ordinary citizens. See Samson v. California, 547 U.S. 843, 848 (2006) ("We further observed that, by virtue of their status alone, probationers [and parolees] do not enjoy 'the absolute liberty to which every citizen is entitled.' " (quoting United States v. Knights, 534 U.S. 112, 119 (2001))); United States v. Newton, 369 F.3d 659, 665 (2d Cir.2004) (noting that "probationers and parolees are subject to a degree of impingement upon privacy that would not be constitutional if applied to the public at large") (internal quotation marks and citation omitted). However, "[e]ven if a warrant is not required, a search is not beyond Fourth Amendment scrutiny; for it must be reasonable in its scope and manner of execution." Maryland v. King, 133 S.Ct. 1958 (2013). Reasonableness still must be measured "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interest." Samson, 547 U.S. at 848 (quoting Knights, 534 U.S. at 118–19); accord Newton, 369 F.3d at 665 (Even though parolees have a diminished expectation of privacy, "the Fourth Amendment's reasonableness requirement" still must be satisfied (quoting Griffin v. Wisconsin, 483 U.S. 868, 873 (1987)).

**\*5** With regard to searches of parolee's homes, the standard adopted by the New York Court of Appeals in *People v. Huntley* has been widely adopted in the Second Circuit: A "parolee's constitutional right to be secure against unreasonable searches and seizures is not violated when his apartment is searched, without a search warrant, by his parole officer if the latter's conduct is rationally and reasonably related to the performance of his duty as a parole officer." 43 N.Y.2d 175, 179, 401 N.Y.S.2d 31, 33 (1977); see United States v. Newton, 369 F.3d 659, 666 (2d Cir.2004) ("Huntley's articulation of a reasonable relationship rule for warrantless parole searches is 'coextensive with the requirements of the Fourth Amendment.' " (quoting United States v. Grimes, 225 F.3d 254, 259 n. 4 (2d Cir.2000))); see also United States v. Massey, 461 F.3d 177, 179 (2d Cir.2006) ("[T]he state has a legitimate interest in closely monitoring the activities' of [ ] parolees and a home visit is a 'routine and appropriate element[ ] of supervising a convicted person.' " (quoting United States v. Reyes, 283 U.S. 446, 460 (2d Cir.2002) (internal marks omitted)). In 2006, the Supreme Court seemed to adopt a different standard-that a parolee, at least in the circumstances of that case, did "not have an expectation of privacy that society would recognize as legitimate." Samson, 547 U.S. at 852.

Courts in this circuit are divided on whether the standard articulated by the Supreme Court in *Samson* has replaced the *Huntley* "reasonableness" test. The different views arise largely from the question whether the relevant parole regulation in New York is sufficiently similar to the California statute at issue in *Samson*. See United States v. White, 622 F.Supp.2d 34, 41 (S.D.N.Y.2008) ("[T]hus there is no consensus on whether or not *Samson* applies to cases involving New York parolees.") (collecting cases). In the instant case, there has been no allegation that Plaintiff Rodriguez signed release paperwork consenting to a lowered expectation of privacy, as he would have under the California statute. So it is not clear that the standard in *Samson* would be applicable to him. Also, the Second Circuit has yet to explore whether or how the holding in *Samson,* which pertained to the search of a parolee's person, relates to the search of a parolee's apartment, which is the situation here. See White, 622 F.Supp.2d 34 at 41–42 ("[T]he scope of Samson's holding

is unclear.... At no point in the opinion does the Supreme Court address the issue of whether a suspicionless search of a parolee's residence is permitted by the Fourth Amendment.") In any event, it is unnecessary for the Court to weigh in on this debate now.

Regardless of the standard employed, it is clear on the basis of Plaintiffs' allegations that the search of Plaintiff Rodriguez's room by his parole officer, Defendant Johnson, was reasonable and did not violate his reasonable expectation of privacy.

### 2. Police officers and searches of parolees

**\*6** If Defendant Johnson's search were the only basis for Plaintiff's claim, the analysis would end there. In addition to her search of Plaintiff Rodriguez's room on June 18, 2009, Defendant Johnson is alleged to have: (1) falsely stated that she recovered contraband in Plaintiffs' apartment, when she had not, to conceal the fact that the police officers had conducted a warrantless search and (2) falsely claimed to have found two knives in Plaintiff Rodriguez's room, when the police officers actually found the knives in the front entry of Plaintiffs' apartment as part of a religious statue. However, as stated above, Plaintiffs' own submission indicates that Defendants admit that Defendant Davodian, and not Defendant Johnson, discovered the contraband.

The Court examines whether Plaintiffs have stated a claim against the NYPD Officers for an illegal search, and, by extension, against Defendant Johnson for attempting to help the officers conceal this fact. "In general the standard by which the reasonableness of a search or seizure with respect to a parolee by a police officer is to be measured would be the familiar requirement of a showing of probable cause." *People v. Huntley,* 43 N.Y.2d 175, 181, 371 N.E.2d 794, 797 (1977); *see United States v. Grimes,* 225 F.3d 254, 259 n. 4 (2d Cir.2000) (noting that police officers generally could not conduct warrantless search without probable cause). However, where the police officers work in tandem with the parole officer, the probable cause requirement may be waived and a warrant may be not necessary. "[T]he law permits cooperation between probation officers[, parole officers] and other law enforcement officials so that they may work together and share information to achieve their objectives." *United States v. Reyes,* 283 F.3d 446, 471 (2d Cir.2002).

Some criminal defendants have alleged a "stalking horse" defense, claiming that a police officer unlawfully used the authority of a probation officer to evade the Fourth Amendment's usual warrant and probable cause requirements for police searches and seizures. The Second Circuit has expressly rejected "stalking horse" challenges to a police search in conjunction with a parole officer. *Reyes,* 283 F.3d at 462 (rejecting stalking horse challenges in the Second Circuit); *United States v. Newton,* 369 F.3d 659, 667 (2d Cir.2004) (affirming *Reyes's* rejection of stalking horse theory in the Second Circuit); *cf. United States v. Watts,* 67 F.3d 790, 794 (9th Cir.1995) (noting that "probation search may not be used as a subterfuge for a criminal investigation"), *rev'd on other grounds,* 519 U.S. 148 (1997). The Second Circuit observed that parole and police officers frequently collaborate; indeed, " 'it is difficult to imagine a situation' in which a probation/parole officer who entered a residence with other law enforcement officials based on 'information about a supervisee's illegal activities ... would not be pursuing legitimate supervis[ion] objectives.' " *Newton,* 369 F.3d at 667 (quoting *Reyes,* 283 F.3d at 463). Thus, it is clear in the Second Circuit, where a police officer accompanies a parole officer in performing a parole search, a warrant is not required, so long as the search is rationally and reasonably related to the parole officer's duties.

**\*7** Drawing all inferences in favor of Plaintiffs, as is required, the Court concludes that the police actions during the June 18 Search occurred as part of a parole search initiated by Defendant Johnson and parole officer Pitchardo, and that the probable cause requirement was waived vis-à-vis the police officers, at least as far as Plaintiff Rodriguez is concerned. * *

On the evening of June 18, 2009, Defendant Johnson was working on a special operation with the New York City Police. The police entered the apartment moments after Defendant Johnson exited the apartment. Although she was not present when the police initially arrived, Defendant Johnson returned quickly after the NYPD officers contacted her. The fact that the NYPD Officers knew to contact Defendant Johnson and were able to summon her quickly, corroborates that the NYPD Officers were collaborating with the parole officers.

Although Defendant Johnson was not in the apartment at all times during the June 18 Search, the facts as alleged show that while the search took place, Defendant Johnson

was working with the police officers. Defendant Johnson initiated the parole search. She viewed Plaintiff Rodriguez's bedroom. Defendant Johnson then left the apartment to follow a guest, Lisabeth Franco. The inference is easily drawn that Defendant Johnson left in pursuit of Franco and apparently was successful. The police arrived at the apartment while the parole officers were outside and continued the search, but Defendant Johnson returned to the apartment before the search concluded, tapping the head of Plaintiff Rodriguez, who by that time had been detained, when she again exited the building. Plaintiffs allege that both Plaintiff Rodriguez and Franco were arrested and taken to the 34th precinct after the June 18 Search.

The Second Circuit's holding in *Reyes* and *Newton* are controlling here. As a matter of law, Plaintiff has not stated claims sufficient to show that the police officers were required to obtain a warrant before searching Plaintiff Rodriguez's apartment on June 18, 2009. Because the search itself was a parole search, the allegation that Defendant Johnson made false statements after the search concluded, concerning where the contraband was discovered or by whom, does not alter the legality of the search itself. With regard to Plaintiff Rodriguez, the parole search had a constitutional basis when it occurred, and allegedly false statements made by a parole officer do not change the legality of the preceding search. [2]

*Cf.* United States v. Canfield, 212 F .3d 713, 718 (2d Cir.2000) (concluding that search was not illegal, even though search warrant potentially included false statements, because the false statements were not material to the probable cause determination); United States v. Martin, 426 F.3d 68, 73 (2d Cir.2005) ("A false statement is material when the alleged falsehoods or omissions were necessary to ... [a] probable cause finding.") (internal quotation marks and citations omitted); United States v. Salameh, 152 F.3d 88, 114 (2d Cir.1998) (affirming constitutionality of search after finding that "allegedly false statements in ... affidavit were not necessary for a finding of probable cause"). Thus, assuming Plaintiffs' allegations are true, Plaintiffs have not alleged sufficient facts to state a claim against Defendant Johnson for illegal search under the Fourth Amendment.

**\*8** Accordingly, Defendant Johnson's motion to dismiss Plaintiffs' Second Amended Complaint for failure to state a claim is granted.

**C.** Qualified Immunity

Defendant Johnson also argues that she is entitled to qualified immunity. Government officials "performing discretionary functions generally ... are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999) (internal quotation marks and citation omitted).

Qualified immunity protects a government official sued in his official capacity: '(1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objective[ly] legal [ly] reasonable[ ] ... in light of the legal rules that were clearly established at the time it was taken." Manganiello v. City of N.Y., 612 F.3d 149, 164 (2d Cir.2010) (alterations and omission in original) (internal quotation marks and citations omitted).

As explained above, Plaintiffs' allegations, construed in their favor, are insufficient to allege a violation of Plaintiffs' rights. Thus, Defendant Johnson is entitled to qualified immunity.

**D.** Statute of Limitations

Because the Court concludes that the Second Amended Complaint does not state a claim and that Defendant Johnson is entitled to qualified immunity, the Court does not reach the statute of limitations issue.

**III.** Conclusion

For the foregoing reasons, Defendant Johnson's motion to dismiss Plaintiffs' Second Amended Complaint is GRANTED with regard to the claims against Defendant Johnson, but not the remaining Defendants.

The Clerk of the Court is directed to terminate the motion at Docket Number 55 and to mail a copy of this Order to the pro se Plaintiffs.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 4779639

## Footnotes

1    To the extent that Plaintiffs attempt to state a claim under the First Amendment in relation to knives removed from a religious statue, the Court notes that, in granting Plaintiffs' motion to amend on October 24, 2011, Magistrate Judge Katz allowed Plaintiffs to add only an illegal search claim in relation to the June 18 Search, and dismissed all other claims stemming from the June 18 Search.

2    To the extent that Plaintiffs Seda or Velez attempt to state a claim against Defendant Johnson for an illegal search, this claim also is dismissed. The Court does not address the issue on this motion whether these plaintiffs can state an illegal search claim against the NYPD Officers for invading their reasonable expectation of privacy in the apartment's common areas.

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Maller v. Rite Aid Corp., Not Reported in Fed. Supp. (2016)

Case 9:20-cv-01043-MAD-TWD    Document 47    Filed 10/18/21    Page 32 of 58

2016 WL 1275628
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Stacy MALLER, Plaintiff,
v.
RITE AID CORP.; and Rite Aid
of New York, Inc., Defendants.

1:14-CV-0270
|
Signed 03/31/2016

**Attorneys and Law Firms**

STACY MALLER, 4 Bluestone Ridge, Clifton Park, NY 12065, Plaintiff, Pro Se.

McCABE, COLLINS, McGEOUGH, FOWLER, LEVINE & NOGAN LLP, 346 Westbury Avenue, P.O. Box 9000, Carle Place, NY 11514, OF COUNSEL: TAMARA M. HARBOLD, ESQ., Albany, NY 12205, Counsel for Defendants.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this products liability and negligence action filed *pro se* by Stacy Maller ("Plaintiff") against Rite Aid Corporation and Rite Aid of New York, Inc. (collectively, "Defendants"), is Defendants' motion to dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, for failure to comply a Court Order directing her to respond to certain of Defendants' discovery demands pursuant to Fed. R. Civ. P. 16(f) and/or 41(b). (Dkt. No. 57.) For the reasons set forth below, Defendants' motion is denied and the action is nonetheless remanded to New York State Supreme Court, Saratoga County.

**I. RELEVANT BACKGROUND**

**A. Procedural History**
On or about November 1, 2013, Plaintiff commenced this action in New York State Supreme Court, Saratoga County. The case was removed by then-Defendants Ortho-McNeil-Janssen Pharmaceutical, Inc., Johnson & Johnson,

and Johnson & Johnson Pharmaceutical Research and Development, LLC, on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). (Dkt. No. 1 [Notice of Removal].) On July 23, 2014, Plaintiff stipulated to discontinue the action as to the three aforementioned Defendants as well as Defendant McKesson Corporation, leaving Rite Aid Corporation as the only remaining Defendant. (Dkt. No. 26.) On March 31, 2015, Plaintiff filed a motion for leave to file an Amended Complaint, proposing to add Rite Aid of New York, Inc. ("Rite Aid New York") as a Defendant. (Dkt. No. 48.) Rite Aid Corporation did not oppose Plaintiff's motion and filed an Amended Answer. (Dkt. No. 49.) On April 16, 2015, Magistrate Judge Christian F. Hummel granted Plaintiff's motion to amend and ordered that Plaintiff's proposed Amended Complaint (which was signed and was attached to her motion to amend) "shall serve as the operative pleading in this matter." (Dkt. No. 54.)

Because this Decision and Order is intended primarily for the review of the parties, the Court will not recite in detail the procedural history of this case, with which the parties are familiar.

**B. Plaintiff's Amended Complaint**
Generally, construed liberally, Plaintiff's Amended Complaint alleges that Defendants' sold and dispensed to Plaintiff, without proper warnings, a defectively designed drug, Levaquin, to treat a minor infection, and that Plaintiff took the drug as directed and "became sick, sore, lame and disabled and suffered serious physical, psychological, emotional, and economic injury." (Dkt. No. 48, Attach. 2, at ¶¶ 16-17 [Plf.'s Am. Compl.].) Because (again) this Decision and Order is intended primarily for the review of the parties, the Court will not recite in detail the remaining factual allegations of Plaintiff's Amended Complaint; rather, the Court refers the reader to the Amended Complaint in its entirety. (*Id.*)

Based on these factual allegations, construed liberally, Plaintiff's Amended Complaint asserts five claims under New York State law: (1) a claim that Levaquin was defectively designed; (2) a claim that Levaquin was dispensed to her without adequate warnings regarding the medical risks attendant to its use; (3) a claim that Defendants breached an implied warranty that Levaquin was reasonably fit for the ordinary purposes for which it was intended; (4) a claim that a pharmacist working at the Rite Aid pharmacy was negligent in that the pharmacist dispensed Levaquin to Plaintiff without the "Black Box" warning and "Patients Medication Guide"

Case 9:20-cv-01043-MAD-TWD    Document 47    Filed 10/18/21    Page 33 of 58

Maller v. Rite Aid Corp., Not Reported in Fed. Supp. (2016)

mandated by the Food and Drug Administration, and despite the fact that Plaintiff's physician had prescribed her Cipro, a drug that Plaintiff had previously taken with no ill effects; and (5) a claim that Defendants were negligent *per se* because, among other things, they (a) failed to comply with state and federal regulations related to providing warnings and information about the use of Levaquin, (b) prescribed Plaintiff Levaquin to treat a "possible urinary tract infection," despite the fact that Levaquin is "too risky to use for minor infections," (c) failed to discover that they had previously dispensed Vicodin to Plaintiff to treat a joint disorder and that Levaquin was therefore contraindicated, and (d) failed to warn Plaintiff's fiancé–who picked up the medication at the pharmacy–about the risks and side effects of Levaquin. (*See generally* Dkt. No. 48, Attach. 2 [Plf.'s Am. Compl.].)

**\*2  C. Parties' Briefing on Defendants' Motion to Dismiss**

### 1. Defendants' Memorandum of Law

Generally, in support of their motion to dismiss, Defendants assert two arguments: (1) Plaintiff's Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because both Plaintiff and Defendant Rite Aid New York reside in New York State, and, as a result, complete diversity of the parties under 28 U.S.C. § 1332(c) no longer exists; and (2) in the alternative, Plaintiff's Amended Complaint should be dismissed due to her failure to provide Defendants with discovery, specifically, her failure to provide adequate responses to three of Defendants' interrogatories and to their demand for production of documents. (Dkt. No. 57, Attach. 7, at 2-7 [Defs.' Memo. of Law].) [1]

### 2. Plaintiff's Opposition Memorandum of Law

Generally, construed liberally, in Plaintiff's response to Defendants' motion, she asserts three arguments: (1) Defendants have not established that the Court lacks subject-matter jurisdiction over the action because the document adduced in support of their motion–a "purported printout" from the New York Department of State, Division of Corporations' website–was not properly authenticated or certified; (2) to the extent that this Court is no longer a proper form for the action, the action should be remanded to state court pursuant to 28 U.S.C. § 1447, rather than dismissed

pursuant to Fed. R. Civ. P. 12(b)(1); and (3) dismissal of the Amended Complaint due to Plaintiff's alleged failure to provide discovery should be denied because (a) Defendants' counsel previously consented to an extension of time for Plaintiff to provide discovery responses, (b) Plaintiff's delay in responding is excusable in light of her medical condition and her status as a *pro se* litigant, and (c) Defendants also have not responded to Plaintiff's first set of interrogatories. (Dkt. No. 61 at 1-5 [Plf.'s Opp'n Memo. of Law].)

### 3. Defendants' Reply Memorandum of Law

Generally, in their reply, Defendants assert three arguments: (1) any argument by Plaintiff that Rite Aid New York is not a domestic business corporation doing business in New York "lacks any factual or legal justification and is a specious argument ... to prolong this Court's decision to dismiss" Plaintiff's case; (2) dismissal, and "not remand," is the appropriate remedy for lack of diversity jurisdiction under 28 U.S.C. § 1332; and (3) any reference to Defendants' failure to satisfy their discovery obligations "is nothing more than a red herring" and should be "revisited" after disposition of Defendants' motion to dismiss. (Dkt. No. 62 at 2-5 [Defs.' Reply Memo. of Law].) [2]

## II. RELEVANT LEGAL STANDARD

**\*3** "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

Case 9:20-cv-01043-MAD-TWD    Document 47    Filed 10/18/21    Page 34 of 58

Maller v. Rite Aid Corp., Not Reported in Fed. Supp. (2016)

"The diversity statute confers original jurisdiction on the federal district courts with respect to 'all civil actions where the matter in controversy exceeds the sum or value of $75,000 ... and is between ... citizens of different States.'"

*Scherer v. Equitable Life Assurance Soc'y*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting 28 U.S.C. § 1332[a][1] ).[3] The statute requires complete diversity among the parties; that is, all plaintiffs must be citizens of states diverse from those of all defendants. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005); *accord, e.g., Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir. 1992). Once a case has been removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. 1447(c). Moreover, "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to State court." 28 U.S.C. § 1447(e).

### III. ANALYSIS

**A. Whether the Court's Subject-Matter Jurisdiction Over Plaintiff's Amended Complaint Has Been Destroyed by the Joinder of Rite Aid New York**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in Defendants' memorandum of law. *See, supra*, Part I.C.1 of this Decision and Order. To those reasons, the Court adds one point.

Plaintiff is correct that the printout from the New York State Department of State's website adduced by Defendants, which indicates that Rite Aid New York is a New York corporation, has not been certified. (Dkt. No. 61 at 2-3 [Plf.'s Opp'n Memo. of Law].) However, the Court may take judicial notice of Rite Aid New York's status as a business incorporated in New York based upon documents filed with the New York State Department of State. *See, e.g., Haru Holding Corp. v. Haru Hana Sushi, Inc.*, 13-CV-7705, 2016 WL 1070849, at *2 (S.D.N.Y. Mar. 15, 2016) ("The Court takes judicial notice [pursuant to Fed. R. Evid. 201] of the public Entity Information provided by the New York State Department of State, Division of Corporations Corporate and Business Entity Database showing that [defendant corporation] is an inactive entity as of January 25, 2016.") (footnote omitted);

*Boyce v. Cycle Spectrum, Inc.*, 14-CV-1163, 2015 WL 8273463, at *9 (E.D.N.Y. Dec. 8, 2015) ("The court takes judicial notice of the records of the New York Secretary of State."); *see generally Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (noting that the courts may take "judicial notice of relevant matters of public record"); *Marino v. Bank of Am. Home Loans*, 11-CV-0241, 2013 WL 715611, at *4 (D. Vt. Feb. 27, 2013) ("It has been held that records made available through a state-run website may be judicially noticed under Rule 201 [of the Federal Rules of Evidence].") (citing, *inter alia, Desclafani v. Pave–Mark Corp.*, 07-CV-4639, 2008 WL 3914881, at *6 [S.D.N.Y. Aug. 22, 2008] [taking judicial notice of the contents of records filed with the Florida Department of State, Division of Corporations, retrieved from that agency's website] ). The Court notes that Plaintiff has adduced no evidence suggesting that the record submitted by Defendants was fabricated. Accordingly, the Court takes judicial notice of the documents on file with the New York State Department of State, Division of Corporations, which demonstrate that Rite Aid New York is a New York corporation.

**\*4** For all of these reasons, the Court concludes that complete diversity has been destroyed and that, as a result, the Court no longer has subject-matter jurisdiction over this action.

**B. Whether Plaintiff's Amended Complaint Should Be Dismissed For Lack of Subject-Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) Instead of Remanded**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 61 at 1-2 [Plf.'s. Opp'n Memo. of Law].) *See, supra*, Part I.C.2 of this Decision and Order. To those reasons, the Court adds two points.

First, although Plaintiff has not cross-moved to remand the case to state court, "a challenge to subject matter jurisdiction cannot be waived" and, "[w]here jurisdiction is lacking, .... dismissal is mandatory[.]" *Mehlenbacher v. Azko Nobel Salt, Inc.*, 216 F.3d 291, 295 (2d Cir. 2000); *accord,* Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall be* remanded.") (emphasis added). The Court has the power to (and, under the circumstances present here, must) remand the case *sua*

*sponte* because complete diversity–the basis upon which the case was removed–has been destroyed.[4] *See Santamaria v. Krupa*, 15-CV-6259, 2015 WL 6760140, at *2 (E.D.N.Y. Nov. 5, 2015) ("[*S*]*ua sponte* remand is proper at any time if the district court finds that it does not possess subject matter jurisdiction.") (citing 📄 *Mitskovski v. Buffalo and Fort Erie Pub. Bridge Auth.*, 435 F.3d 127, 133-34 [2d Cir. 2006]); *Walker v. Rogers*, 15-CV-7376, 2016 WL 236223, at *1 (E.D.N.Y. Jan. 19, 2016).

Second, the sole case cited by Defendants in support of their argument that dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is required is inapposite. (Dkt. No. 62 at 4 [Defs.' Reply Memo. of Law] [citing 📄 *Pennsylvania Pub. Sch. Emp. Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111 (2d Cir. 2014)].) In that case (which was not commenced in state court), the Second Circuit held that the district court properly dismissed a nondiverse plaintiff's claim in order "to *preserve* [the court's] subject matter jurisdiction" because that party's presence would destroy complete diversity. 📄 *Pennsylvania Pub. Sch. Emp. Ret. Sys.*, 772 F.3d at 115, 117 (emphasis added). Neither the proper procedure following removal nor the appropriateness of dismissal of the case as a whole was implicated.

**\*5** Accordingly, for all of these reasons, this action is remanded to New York State Supreme Court, Saratoga County.

### C. Whether Plaintiff's Amended Complaint Should Be Dismissed Due to Plaintiff's Failure to Comply with Defendants' Discovery Demands

After carefully considering this matter, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law. *See*, *supra*, Part I.C.2 of this Decision and Order. To those reasons, the Court adds the following analysis.

Defendants have not shown cause for the relief requested in this portion of their motion. Setting aside the fact that Defendants do not specify the rule on which they base their request (as required by Local Rule 7.1[a][1] of the Local Rules of Practice for this Court), the Order on which they rely is more akin to a Scheduling Order than an Order compelling a response to a specific interrogatory. In any event, the Court has weighed the five factors set forth in *Hevner v. Village E.*

*Towers, Inc.*, 293 F. App'x 56, 58 (2d Cir. 2008) (summary order), and finds that they do not weigh in favor of dismissal.

In the alternative, the Court finds that, because remand is appropriate due to the Court's lack of subject-matter jurisdiction, the Court has no authority to reach this issue. "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." 📄 *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). "Without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case." 📄 *Id.* at 431; *accord, e.g., Lo v. St. George's Univ.*, 14-CV-3577, 2014 WL 6673849, at *4 (E.D.N.Y. Nov. 24, 2014); *see also Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir 1999) (concluding that, "where a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice" as a "procedural sanction" because such an order "has the effect of a final adjudication on the merits favorable to [the] defendant") (citation and internal quotation marks omitted); Fed. R. Civ. P. 41(b) (providing that, unless the court states otherwise, "a dismissal" ordered as a procedural sanction "operates as an adjudication upon the merits").

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) (Dkt. No. 57) is **DENIED**; and it is further

**ORDERED** that, pursuant to 📄 28 U.S.C. § 1447(c) and 📄 28 U.S.C. § 1447(e), this action is **REMANDED** to New York State Supreme Court, Saratoga County, in its entirety, without costs and expenses to either party; and it is further

**ORDERED** that the Clerk of this Court shall forward a certified copy of this Decision and Order to the Clerk of New York State Supreme Court, Saratoga County, and **CLOSE** this action.

### All Citations

Not Reported in Fed. Supp., 2016 WL 1275628

Case 9:20-cv-01043-MAD-TWD   Document 47   Filed 10/18/21   Page 36 of 58

Maller v. Rite Aid Corp., Not Reported in Fed. Supp. (2016)

## Footnotes

1   Attached to Defendants' motion papers is, *inter alia*, a printout from the website of the New York State Department of State, Division of Corporations, reflecting that Rite Aid of New York, Inc., is an active domestic business corporation, and has held that status since 1972. (Dkt. No. 57, Attach. 4.)

2   The Court notes that Defendants' reply papers consist of, in actuality, an affirmation containing, *inter alia*, legal citations. (Dkt. No. 62.) Defense counsel is respectfully reminded that such hybrid documents are impermissible in this District. *See* N.D.N.Y. L.R. 7.1(a)(2) ("An affidavit must not contain legal arguments but must contain factual and procedural background that is relevant to the motion the affidavit supports."); *accord*, *Duttweiler v. Eagle Janitorial, Inc.*, 05-CV-0886, 2009 WL 5171834, at *3 (N.D.N.Y. Dec. 22, 2009) (Suddaby, J.) (striking affidavit of counsel because [1] it was not based on personal knowledge of events giving rise to action and [2] it contained legal argument); *Duttweiler v. Eagle Janitorial, Inc.*, 05-CV-0886, 2009 WL 1606351, at *2-3 (N.D.N.Y. June 4, 2009) (Suddaby, J.); *Road Dawgs Motorcycle Club of the U.S ., Inc. v. 'Cuse Road Dawgs, Inc.*, 679 F. Supp. 2d 259, 281-82 & n. 54 (N.D.N.Y.2009) (Suddaby, J.). Although the Court will overlook this violation of the Court's Local Rules in the interest of judicial economy, defense counsel is respectfully reminded that legal arguments in support of a motion must be set forth in a memorandum of law in accordance with Local Rule 7.1(a)(1).

3   For the purposes of the diversity statute, a corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business ...." 28 U.S.C. § 1332(c)(1); *accord,* *Universal Licensing Corp. v. Paola del Lungo, S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002).

4   The Court notes that 28 U.S.C. § 1447(e) is not to the contrary. When a party "seeks to join additional defendants whose joinder would destroy subject matter jurisdiction," a district court has the discretion to "deny joinder, *or* permit joinder *and* remand the action to the State court." 28 U.S.C. § 1447(e) (emphasis added). In this case, the Court permitted joinder of the diversity-destroying party (that is, Rite Aid New York) when it granted Plaintiff leave to file her Amended Complaint. As a result, remand is mandated by the statute. *See, e.g., Cooper v. Trustees of College of Holy Cross*, 13-CV-8064, 2014 WL 2738545, at *12 (S.D.N.Y. June 17, 2014) (granting plaintiff's motion to amend her complaint, and noting that, when an amended complaint "joining at least one individual Trustee who is a citizen of New York is filed," the action will be removed to state court "because at that time the Court will no longer have subject matter jurisdiction.")

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:20-cv-01043-MAD-TWD   Document 47   Filed 10/18/21   Page 37 of 58

Liverpool v. City of New York, Not Reported in Fed. Supp. (2019)

2019 WL 3745734
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Anton F. LIVERPOOL, Plaintiff,

v.

The CITY OF NEW YORK; Shilo Drug and
Therapeutic Counseling Program; Dr. Jackson,
Director and Head Psychiatrist Clinician of
Shilo Therapeutic Program; Parole Officer
John Doe #1; Shilo Staff John Doe #2;
Shilo Staff Jane Doe, et al., Defendants.

1:19-CV-5527 (CM)
|
Signed 08/07/2019

**Attorneys and Law Firms**

Anton F. Liverpool, Cranston, RI, pro se.

ORDER TO AMEND

COLLEEN McMAHON, Chief United States District Judge:

**\*1** Plaintiff, currently incarcerated at the Anthony P. Travisono Intake Service Center in Rhode Island, brings this *pro se* action under 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights. By order dated July 18, 2019, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis.* [1] For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within sixty days of the date of this order.

STANDARD OF REVIEW

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these

grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. A complaint states a claim for relief if the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To review a complaint for plausibility, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 555). But the Court need not accept "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

BACKGROUND

Named as Defendants are the Shilo Drug and Therapeutic Counseling Program (Shilo), Shilo Director and Head Psychiatrist Dr. Jackson, and two Shilo staff members (Shilo Defendants); a John Doe parole officer; the City of New York; Brooklyn Legal Services attorney Alicia Briody; Queens Legal Aid Society employee Jane Doe #3; and Brooklyn Defender Service attorney Jane Doe #4. (ECF No. 1 ¶¶ 12-14.) The complaint contains the following allegations. In June or July 2016, Plaintiff was released "from the courts of Queens County NY and the Department of Corrections" to Shilo. (*Id.* ¶ 16.) After an intake with his assigned counselor, Parole Officer John Doe "inappropriately fondled" Plaintiff's buttocks. According to Plaintiff, he reported the incident to Defendants, but none of them took any action to ensure his safety at Shilo. (*Id.* ¶ 22.) According to Plaintiff, Shilo employees John Doe #2 and Jane Doe #1 told Plaintiff to "just leave it alone." (*Id.* ¶ 18.). Plaintiff claims that the Shilo Defendants, in failing to act on his complaint, subjected him to cruel and unusual punishment, and were negligent in providing mental health treatment. He further states that his

Case 9:20-cv-01043-MAD-TWD    Document 47    Filed 10/18/21    Page 38 of 58

Liverpool v. City of New York, Not Reported in Fed. Supp. (2019)

attorneys were "indifferent" to his allegations and "failed to mitigate" the harm to him "through the court's system." (*Id.* ¶¶ 19-29.)

### DISCUSSION

**A. Parole Officer**

**\*2** Plaintiff's allegation that a John Doe parole officer groped him could state a claim under § 1983. But Plaintiff does not provide enough information for the parole officer's identity to be ascertained. Moreover, Plaintiff has not established the parole officer's connection to Shilo. For example, it is not completely clear that the groping incident occurred at Shilo, or what relationship, if any, the parole officer had with Shilo. The Court grants Plaintiff leave to file an amended complaint that provides more facts about the incident, the parole officer, and his relationship to Shilo.

**B. Shilo Defendants**

To state a claim under § 1983, a plaintiff must allege both that: (1) a person acting under the color of state law, or a "state actor"; (2) violated a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

Shilo appears to be a private treatment facility, not a state actor. If that is the case, Shilo and its employees are not state actors. A private entity's activity can be attributed to the government in three situations: (1) the entity acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) the entity willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) the state has delegated a public function to the entity (the "public function" test). *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012). The fundamental question under each test is whether the private entity's challenged actions are "fairly attributable" to the government. *Id.* (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Plaintiff asserts that he was released from DOC custody to Shilo. But even if Plaintiff was required to participate in an inpatient treatment program as an alternative to incarceration,

he has not plausibly alleged that the Shilo Defendants are state actors who would be subject to liability under § 1983. *See, e.g., Vaughn v. Phoenix House Programs of New York*, No. ECF 1:14-CV-3918 (RA), 2015 WL 5671902, at \*5 (S.D.N.Y. Sept. 25, 2015) ("That Plaintiff opted to participate in the program at Phoenix House in lieu of completing a prison sentence does not does not transform the treatment facility and its employees into state actors, nor does it render their actions in implementing the internal requirements of the treatment program — which were not created or directed by the court — into state action."); *Mele v. Hill Health Ctr.,* 609 F. Supp. 2d 248, 258–59 (D. Conn. 2009) (finding no state action by defendants who administered a drug intervention program even though the state permitted criminal defendants to complete such program in lieu of prosecution or serving a sentence).

Moreover, even if the Shilo defendants could be deemed to be state actors, it is not readily apparent that they had any control over the parole officer, or had a duty to protect Plaintiff from the parole officer. The Court grants Plaintiff leave to amend his complaint to provide any additional facts that may exist about the relationship between the parole officer and Shilo.

**C. Attorneys**

A claim for relief under § 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). Absent special circumstances suggesting concerted action between an attorney and a state representative, *see Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), the representation of a defendant by private counsel in state criminal proceedings does not constitute the degree of state involvement or interference necessary to establish a claim under § 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender. *See Bourdon*

Case 9:20-cv-01043-MAD-TWD    Document 47    Filed 10/18/21    Page 39 of 58

Liverpool v. City of New York, Not Reported in Fed. Supp. (2019)

*v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 324-25 (1981)); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (holding that legal aid organization ordinarily is not a state actor for purposes of § 1983).

**\*3** As the attorney-Defendants (Brooklyn Legal Services attorney Alicia Briody, Queens Legal Aid Society employee Jane Doe #3, and Brooklyn Defender Service attorney Jane Doe #4) are private parties who do not work for any state or other government body, Plaintiff has not stated a § 1983 claim against them.

### D. City of New York

When a plaintiff sues a municipality under § 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

Plaintiff does not allege facts suggesting that a municipal policy, custom, or practice caused his injury, and thus his complaint does not state a claim against the City of New York.

### E. Leave to Amend/Plaintiff's Litigation History

The exact degree of solicitude that should be afforded to a *pro se* litigant in any given case depends upon a variety of factors, including the procedural context and relevant characteristics of the particular litigant. *Tracy v. Freshwater*, 623 F.3d

90 (2d Cir. 2010). A *pro se* litigant who has previously brought a similar case may be charged with knowledge of particular legal requirements. *See Sledge v. Kooi*, 564 F.3d 105, 109-110 (2d Cir. 2009) (discussing circumstances where frequent *pro se* litigant may be charged with knowledge of particular legal requirements).

Plaintiff has filed a number of *pro se* cases in this Court. *See Liverpool v. City of New York*, ECF 1:18-CV-01354, 1 (PAE) (BCM) (S.D.N.Y. filed Feb. 13, 2018) (pending); *Liverpool v. Davis*, ECF 1:17-CV-03875, 1 (KPF) (S.D.N.Y. filed May 22, 2017) (pending); *Liverpool v. Cleveland*, ECF 1:17-CV-2244, 2 (CM) (S.D.N.Y. Mar. 29, 2017) (transferring case to the United States District Court for the Eastern District of New York); *Liverpool v. Morgan*, ECF 1:00-CV-00722 (DC) (S.D.N.Y. July 12, 2000) (dismissing complaint without prejudice for failure to prosecute).

In light of Plaintiff's litigation history, he should be able to plead facts stating a § 1983 claim should they exist.[2] Accordingly, the Court grants Plaintiff leave to amend his complaint to detail his claims. In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

> **\*4** a) give the names and titles of all relevant persons;

> b) describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

> c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

> d) give the location where each relevant event occurred;

> e) describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

> f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were

Liverpool v. City of New York, Not Reported in Fed. Supp. (2019)

Case 9:20-cv-01043-MAD-TWD    Document 47    Filed 10/18/21    Page 40 of 58

violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

**CONCLUSION**

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 19-CV-5527 (CM). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Clerk of Court is directed to docket this as a "written opinion" within the meaning of Section 205(a)(5) of the E-Government Act of 2002.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

**\*5** SO ORDERED.

Attachment

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

Write the full name of each plaintiff.    ___ CV _____
(Include case number if one has been assigned)

-against-                                 AMENDED
                                          COMPLAINT
                                          (Prisoner)

_____          Do you want a jury trial?
                                          ☐ Yes   ☐ No
_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

**I.    LEGAL BASIS FOR CLAIM**

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).

☐ Violation of my federal constitutional rights

☐ Other: _____

**II.    PLAINTIFF INFORMATION**

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____    _____    _____
First Name       Middle Initial    Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

_____    _____    _____
County, City      State             Zip Code

**III.    PRISONER STATUS**

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☐ Other: _____

Page 2

Case 9:20-cv-01043-MAD-TWD Document 47 Filed 10/18/21 Page 41 of 58

**Liverpool v. City of New York, Not Reported in Fed. Supp. (2019)**

## IV. DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

## V. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## VI. RELIEF

State briefly what money damages or other relief you want the court to order.

**WESTLAW** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:20-cv-01043-MAD-TWD   Document 47   Filed 10/18/21   Page 42 of 58

**Liverpool v. City of New York, Not Reported in Fed. Supp. (2019)**

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing:

Page 6

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3745734

## Footnotes

1   Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed *in forma pauperis. See* 28 U.S.C. § 1915(b)(1).

2   Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." The Court will determine at a later time whether to exercise supplemental jurisdiction over any state-law claims Plaintiff seeks to raise.

   *See Martinez v. Simonetti*, 202 F.3d 625, 636 (2d Cir. 2000) (directing dismissal of supplemental state-law claims where no federal claims remained).

**End of Document**                           © 2021 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by Ford v. Miller,    S.D.N.Y.,   August 23, 2019

2015 WL 5671902
United States District Court,
S.D. New York.

Mark VAUGHN, Plaintiff,
v.

PHOENIX HOUSE PROGRAMS OF NEW
YORK, Arthur Wallace, Brendan L. Hoffman,
Thomas Jasper, and Denise Buckley, Defendants.

No. 14–CV–3918 (RA).
|
Signed Sept. 25, 2015.

*OPINION & ORDER*

RONNIE ABRAMS, District Judge.

**\*1** *Pro se* Plaintiff Mark Vaughn brings this action under
the Fair Labor Standards Act ("FLSA"), 42 U.S.C. §
1983, and provisions of New York State and City law for
claims relating to work he performed while receiving in-
patient substance abuse treatment at Phoenix Houses of New
York, Inc. ("Phoenix House") as part of an alternatives to
incarceration program.[1] In his Amended Complaint, Plaintiff
claims that those work assignments violated his constitutional
rights and deprived him of fair pay to which he was entitled
under federal and state law. Defendants Phoenix House and
Phoenix House employees Denise Buckley, Arthur Wallace,
Thomas Jasper, and Brendan Hoffman move to dismiss the
complaint pursuant to Federal Rule of Civil Procedure 12(b)
(6). For the reasons that follow, the motion is granted.

**BACKGROUND**

**I. Facts**[2]
On July 29, 2009, as part of two alternatives to
incarceration programs—T.A.S.C. and D.T.A.P.—Plaintiff
agreed to participate in an in-patient drug treatment program
in lieu of a prison sentence. Am. Compl. at 7.[3] Pursuant to
that agreement, he alleges he was "mandated" by the Kings
County Supreme Court to Phoenix House for 18–24 months.

*Id.* After completing the inpatient treatment, Plaintiff was also
required to "work on the books" and attend six months of
outpatient services, upon completion of which the charges
against him would be dismissed. *Id.* If he violated the terms of
the agreement, however, he "could be sentenced to the prison
term agreed on by [him] and the court." *Id.*[4]

Plaintiff arrived at Phoenix House in Long Island City
("L.I.C.") on July 28, 2009 to begin a 30–day orientation
program. *Id.* At that time, Jose Rosario was the managing
director of the program; not long after, he was replaced by
Defendant Denise Buckley. *Id.*

Plaintiff alleges that during orientation, residents of Phoenix
House were required to work two eight-hour shifts on
Saturday and Sunday. *Id.* at 8. Following orientation, the
residents were required to work six eight-hour shifts a week.
The residents were not paid for these shifts. According to
Plaintiff, he "became concerned" when he learned he was
required to work without pay and spoke to Phoenix House
employee Ms. Cahill about it; she purportedly told him that
work was part of the treatment program. *Id.* at 8. During
a house meeting, Defendant Terrance Waring—the House
Manager at the L.I.C. campus—informed Plaintiff that he was
assigned to kitchen duty. Plaintiff refused the assignment,
arguing that he was "not there as a laborer." *Id.* at 1, 8.
After the meeting, Waring spoke to Plaintiff in his office
and confirmed that he was at Phoenix House as part of the
T.A.S.C. program. *Id.* at 8. Like Cahill, Waring purportedly
told Plaintiff that the "job function" was a part of the treatment
program and that he could not remain at Phoenix House if he
refused to work. *Id.*

Plaintiff claims that because the alternative to the program
was "going to jail, no ifs, ands, or buts about it," he initially
agreed to perform his work duties and was subsequently
assigned to work as the "basement point." *Id.* at 9. A
"point person"—of which the basement point was one—was
assigned a desk on a particular floor in the facility to relay
information from the front desk to the residents on that floor;
the point person also generally kept track of the comings and
goings on the floor by recording such information in a "point
sheet." *Id.* at 4. After approximately one month, Plaintiff's
assignment was changed to the garbage room. *Id.* at 9. He
worked in those two positions from about August 2009 until
November 2009. *Id.*

**\*2** Soon after starting his work duties, Plaintiff wrote a letter
of complaint to the New York State Office of Alcohol and

Substance Abuse Services regarding the work requirement at Phoenix House. The reply he received, however, allegedly told him, in sum and substance, to "do the job function." *Id.*

In November 2009, Plaintiff was sent from the L.I.C. location to the 50 Jay Street location of Phoenix House to attend a carpentry class. *Id.* Defendant William Brown was assigned as Plaintiff's substance abuse counselor while at that location. *Id.* As his work duty, Plaintiff was again assigned to work as basement point. *Id.* In December, Plaintiff began carpentry classes from 9:00 a.m. to 2:30 p.m. *Id.* [5] By that time, Plaintiff was no longer working as basement point but instead was "working various points throughout the building" from 3:00 p.m. to 11:00 p.m. *Id.*

In mid-January 2010, Plaintiff refused to continue working at the facility. *Id.* at 910. This was reported to Brown, who told Plaintiff that he could decide to comply with the rules of the treatment program or choose to "go to jail," but that it "made him no difference." *Id.* at 10. After that conversation, Plaintiff worked at the point "for a few hours" but then abandoned the post; he repeated this pattern for a few days. *Id.* The staff was allegedly "furious" with Plaintiff for leaving the point unattended, which meant that they could not make contact with the other floors. *Id.* at 1011. After Plaintiff was told that he would be discharged from the program if he abandoned his post again, he began reporting for work during the week but refusing to work on the weekends. *Id.* at 11.

Consequently, Brown arranged an "intervention" with Henry Algarin from the Brooklyn T.A.S.C. program. *Id.* Algarin purportedly told Plaintiff that he should "do what [he] needed to do to finish the program and go home." *Id.* On February 3, 2010, Brown wrote a letter to the judge regarding Plaintiff's non-compliance with his work assignments and the court directed Plaintiff to "correct this problem." *Id.* As a result of these interventions, Plaintiff worked "all points on all shifts" assigned to him from November 2009 to October 2010, when he finished the inpatient portion of the T.A.S.C./D.T.A.P. program. *Id.*

Upon his release from in-patient treatment, Plaintiff did not abide with the outpatient requirements of his agreement; he was therefore "mandated" back to Phoenix House in February 2011 for a minimum of six additional months. *Id.* Defendant Arthur Wallace was assigned as Plaintiff's substance abuse counselor during this stay. *Id.* at 12. After his 30 day orientation period, Plaintiff refused to complete his work duties despite another intervention by Algarin. *Id.*

Wallace reported his refusal to the judge, who purportedly told Plaintiff that if he was kicked out of the program he would go to jail. *Id.* Plaintiff thus returned to work at various point assignments in the building from April 2011 to November 2012. *Id.*

**\*3** Despite his eventual cooperation, Plaintiff wrote to the Department of Labor ("DOL") regarding his work assignments in the spring of 2011. On May 23, 2011, he received a response from the DOL informing him that it had no authority over his program. *Id.*

At the conclusion of the additional six-month residency, Plaintiff reported to the court and expected to be released. Because he had not complied with the "job function" at the facility, however, the court refused to release him. *Id.*

Plaintiff claims that his work duties at Phoenix House had no therapeutic value and merely provided unpaid labor for the facility that did not benefit Plaintiff or the other residents. *Id.* at 13. He also claims that those work duties prevented him from participating in treatment during work hours and that, as a result, he did not receive an adequate amount of therapeutic treatment while in the program. *Id.* at 13–14. [6]

## II. Procedural History

Plaintiff filed this action on May 12, 2014, and filed an Amended Complaint on September 10, 2014. He asserts violations of the United States Constitution, the FLSA, the New York Labor Law, and other provisions of New York State and New York City law. *See* Dkt. 1, 5. After Defendants moved to dismiss the Amended Complaint on February 17, 2015, Plaintiff voluntarily dismissed his claims against Defendants Terrance Waring, Herman Lazada, and William Brown. Dkt. 49, 50. The Court now dismisses the remaining causes of actions against Defendants Phoenix House, Denise Buckley, Arthur Wallace, Thomas Jasper, and Brendan Hoffman for failure to state a claim.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hogan v. Fischer,* 738 F .3d 509, 514 (2d Cir.2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). A claim has facial plausibility

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where, as here, the complaint was filed *pro se,* it must be construed liberally to raise the strongest arguments it suggests." *Nielsen v. Rabin,* 746 F.3d 58, 63 (2d Cir.2014) (quoting *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir.2013)). In deciding a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), "the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Hogan,* 738 F.3d at 514 (quoting *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 113 (2d Cir.2010)).

## DISCUSSION

Defendants argue that the Amended Complaint should be dismissed in its entirety because (1) Plaintiff's federal claims are untimely, (2) he fails to state a claim for relief under either § 1983 or the FLSA, (3) he fails to allege any personal involvement by Defendants Hoffman and Jasper in the conduct described, and (4) Defendant Hoffman was improperly served. Defendants further argue that because Plaintiff's federal claims must be dismissed, the Court should decline to exercise its supplemental jurisdiction over the remaining claims under state and city law.

**\*4** The Court agrees that Plaintiff has failed to state a claim under federal law, which provides the basis for the Court's subject matter jurisdiction, 28 U.S.C. § 1331, and declines to exercise supplemental jurisdiction over Plaintiffs' claims under state and city law.

## I. Plaintiff's Federal Claims

Plaintiff asserts federal claims pursuant to 42 U.S.C. § 1983 and the FLSA. Neither has merit.

### A. Section 1983

According to Plaintiff, "Phoenix House required [him] to perform labor that [he] had a right not to be made to perform" and that it "used the court system [ ] to aid [it] in [its] illegal exploitation of [him] and [his] rights." Am. Compl. at 14. In so doing, Plaintiff contends that Defendants violated his rights under the Fifth, Thirteenth, and Fourteenth Amendments.

Am. Compl. at 15. The Court construes these claims as arising under 42 U.S.C. § 1983.[7] Even liberally construing Plaintiff's allegations, as the Court must, he nonetheless fails to plausibly allege a constitutional claim for relief.

### 1. State Action Requirement

As an initial matter, Plaintiff's constitutional claims fail as a matter of law because neither Phoenix House nor the individual Defendants are state actors, nor were they acting under color of law. 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law." The statute does not, however, provide a remedy with respect to "merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999) (quotations and citations omitted). To show state action, Plaintiff must establish both that his " 'alleged constitutional deprivation [was] caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, and that the party charged with the deprivation [is] a person who may fairly be said to be a state actor.' " *Grogan v. Blooming Grove Volunteer Ambulance Corps.,* 768 F.3d 259, 263–64 (2d Cir.2014) *cert. denied,* 135 S.Ct. 1895 (2015) (quoting *Cranley v. Nat'l Life Ins. Co. of Vt.,* 318 F.3d 105, 111 (2d Cir .2003)).

Although Plaintiff alleges that he was required to participate in Phoenix House's inpatient treatment program as an alternative to incarceration and that Phoenix House "used the Court system[ ] to aid [it] in [its] illegal exploitation," he has not plausibly alleged that Defendants are state actors. There is no dispute that Phoenix House is a private entity. The Second Circuit has held that the actions of such entities are only "attributable to the state" when they meet one of three tests:

> **\*5** 1. The compulsion test: the entity acts pursuant to the coercive power of the state or is controlled by the state, 2. The public function test: the entity has been delegated a public function by the state, or, 3. The joint

25 Wage & Hour Cas.2d (BNA) 1204

action test or close nexus test: the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies.

*Hollander v. Copacabana Nightclub,* 624 F.3d 30, 34 (2d Cir.2010) (quotations and alterations omitted). None of these tests is applicable here. There is no allegation that the state controlled or ran Phoenix House or that the state delegated a public function to it. Nor is there any allegation suggesting any "joint activity" between Phoenix House and the court or that Phoenix House's functions were "entwined" with state policies.

It is true that Plaintiff received treatment at Phoenix House as part of his T.A.S.C./ D.T.A.P. agreement with the court, but he acknowledges that he voluntarily agreed to participate in the program in order to avoid a prison sentence. *See* Am. Compl. at 7, 9. [8] Phoenix House did not, moreover, act at the direction of the state or pursuant to its coercive power with regard to Plaintiff's treatment. To be sure, the court required Plaintiff to complete the inpatient program and comply with its requirements, but he does not allege that any of the specific conditions of his treatment at Phoenix House, including his work assignments, were ordered or overseen by the court.

Plaintiff has also not plausibly alleged that Phoenix House was engaged in a public function. "Under the public function test, 'the exercise by a private entity of powers traditionally exclusively reserved to the [s]tate' can constitute 'state action.' " *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 259 (2d Cir.2008) (quoting *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 352 (1974)). Although Plaintiff went to Phoenix House to fulfill his court-ordered obligations, at all times Phoenix House and its employees were exclusively engaged in providing substance abuse rehabilitation to the residents—a power not exclusively reserved to the state. *See id.* Furthermore, Phoenix House was not involved in any aspects of Plaintiffs criminal proceeding. Indeed, Plaintiff's allegations make clear that Phoenix House had no control or authority over Plaintiff's court case; it was the judge assigned to his case, and not Defendants, who determined whether he was in compliance with his T.A.S.C./ D.T.A.P. agreement. *See* Am. Compl. at 7, 11, 12; Pl. Opp. (Dkt.40) at 19. *See also Smith v. Devline,* 239 F. App'x 735,

736 (3d Cir.2007) (finding no state action where private company providing treatment services in connection with re-entry had no authority to return resident to prison if he violated the conditions of the program).

That Plaintiff opted to participate in the program at Phoenix House in lieu of completing a prison sentence does not does not transform the treatment facility and its employees into state actors, nor does it render their actions in implementing the internal requirements of the treatment program—which were not created or directed by the court—into state action.

*See Velez v. SES Operating Corp.,* No. 07–CV–10946 (GEL), 2008 WL 2662808, at *2 (S.D.N.Y. July 3, 2008) ("[T]he fact that defendants operate a 'drug and alcohol rehabilitation facility treating many parties who as a condition of their parole and/or criminal guilty plea undergo some drug and alcohol treatment' is [not] suggestive of state action ."); *Mele v. Hill Health Ctr.,* 609 F.Supp.2d 248, 258–59 (D.Conn.2009) (finding no state action by defendants who administered a drug intervention program even though the state permitted criminal defendants to complete such program in lieu of prosecution or serving a sentence). *But see Johnson v. White,* No. 06–CV–2540 (LAP), 2010 WL 3958842, at *4 n. 5 (S.D.N.Y. Sept. 9, 2010); *Wilson v. Phoenix House,* No. 10–CV–7364 (DLC), 2011 WL 3273179, at *3 (S.D.N.Y. Aug. 1, 2011). [9] Here, although Plaintiff's allegations establish some nexus between his treatment at Phoenix House and his agreement with the Court, they also make clear that Phoenix House's sole function was to provide drug treatment and that the terms of that treatment were not directed, monitored, or significantly encouraged by the Court. Thus, the nexus is not sufficiently close to establish state action necessary for § 1983 liability.

### 2. Alleged Constitutional Violations

 ***6** In any event, even if the state action requirement were satisfied, Plaintiff's § 1983 claims fail because the facts alleged do not establish a constitutional violation under the Thirteenth, Fourteenth, or Fifth Amendments.

### a. Thirteenth Amendment

The Thirteenth Amendment prohibits slavery and involuntary servitude. U.S. Cont. amends. 13. The Supreme Court has observed that "involuntary servitude" as contemplated by the Thirteenth Amendment "was intended 'to cover those forms

of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.' " *Immediate v. Rye Neck Sch. Dist.,* 73 F.3d 454, 459 (2d Cir.1996) (quoting *United States v. Kozminski,* 487 U.S. 931, 942 (1988)). Although the Thirteenth Amendment "was intended to prohibit all forms of involuntary labor, not solely to abolish chattel slavery," *McGarry v. Pallito,* 687 F.3d 505, 510 (2d Cir.2012), it does not, however, "bar labor that an individual may, at least in some sense, choose not to perform, even where the consequences of that choice are 'exceedingly bad.' " *Immediate,* 73 F.3d at 459 (citing *United States v. Shackney,* 333 F.2d 475, 485 (2d Cir.1964)).

Plaintiff fails to state a Thirteenth Amendment claim, among other things, because he does not allege that his participation in the Phoenix House treatment program—including its work requirement—was involuntary. [10] In fact, Plaintiff concedes that he chose to participate in the treatment program to avoid jail time, and that, on numerous occasions during his time at Phoenix House, he refused to work. *See* Am. Compl. at 10, 12. Plaintiff also fails to allege that Defendants used any force, restraint, or other method of coercion to compel him to work; indeed, Vaughn asserts that when he refused to perform his assigned duties, his program supervisor told him that he could leave Phoenix House. *Id .* at 8–9. In sum, although Plaintiff participated in the T.A.S.C./ D.T.A.P. program to avoid potential prison time, his participation was nevertheless voluntary and not barred by the Thirteenth Amendment. *See Immediate,* 73 F.3d 454 at 459–61 (concluding that school's mandatory community service requirement did not constitute impermissible involuntary servitude).

### b. Fifth and Fourteenth Amendment Due Process

Plaintiff's allegations further fail to establish a due process violation under the Fifth or Fourteenth Amendment. As an initial matter, only the Fourteenth Amendment applies to Plaintiff's due process claim against Defendants, as they are not alleged to be federal government entities or employees. *See Ambrose v. City of New York,* 623 F.Supp.2d 454, 466–67 (S.D.N.Y.2009). In any event, Plaintiff cannot establish a due process violation under the Fourteenth Amendment because he has not plausibly alleged that he was deprived of a protected liberty or property interest. *Am. Mfrs.,* 526 U.S. at 59 ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.' ").

**\*7** Plaintiff's liberty interests were not impeded because, as discussed above, he was free to decline to participate in the T.A.S.C./ D.T.A.P. program, or to leave Phoenix House at any point. Plaintiff has also not plausibly alleged the deprivation of any protected property interest. To the extent he is alleging that he has a constitutional right to drug treatment, or to a specific type of drug treatment, there is no legal authority for such a claim. *See Smith v. Follette,* 445 F.2d 955, 961 (2d Cir.1971) (no right to drug treatment for drug-related crimes); *Doe v. Goord,* No. 04–CV0570 (GBD)(AJP), 2005 WL 3116413, at *16 (S.D.N.Y. Nov. 22, 2005) (same); *Bailey v. Corbett,* 2013 WL 4737312, at *4 (D.Conn. Sept. 3, 2013) (same); *Mele,* 609 F.Supp.2d at 259 (same). As a result, Plaintiff fails to state a claim under either the Fifth or Fourteenth Amendment.

### B. FLSA

Plaintiff similarly fails to state a claim for relief under the FLSA. The FLSA requires the payment of minimum and overtime wages to anyone who qualifies as an "employee" within the meaning of the statute. *See* 🚩 29 U.S.C. § 203(e). Because Plaintiff does not qualify as a covered employee, however, he was not entitled to be paid for his work assignments at Phoenix House.

In the Second Circuit, "employment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. NYC Health & Hosps. Corp.,* 537 F.3d 132, 14142 (2d Cir.2008) (citation omitted). Thus, "the determination of whether an employer-employee relationship exists for purposes of the FLSA" is governed by an " 'economic reality' test." *Irizarry v. Catsimatidis,* 722 F.3d 99, 104 (2d Cir.2013) *cert. denied,* 134 S.Ct. 1516 (2014). The pertinent "economic realities" do not consist of a set of "uniform factors," but rather, are "assessed by reference to the particular situation with some factors more important than others depending on the FLSA question at issue and the context in which it arises." *Brown v. New York City Dep't of Educ.,* 755 F.3d 154, 167 (2d Cir.2014) (quotations omitted).

Another court in this district recently considered a scenario similar to that presented in this case, namely, whether someone who performs community service work as a condition of an adjournment in contemplation of dismissal

("ACD") of criminal charges qualifies as an employee within the meaning of the FLSA. *Doyle v. City of New York,* —— F.Supp.3d. ——, 2015 WL 926001(JMF) (S.D.N.Y. Mar. 4, 2015). Looking to "our common linguistic intuitions" as the "best guide" to determine if plaintiffs there were employees, Judge Furman concluded that they were not, as they did not perform their community service "for the purpose of enabling them to earn a living" or "to receive financial compensation of any kind." *Id* . at *6. Instead, the purpose of the ACD program was "to enable the parties to resolve cases involving minor offenses in a way that provides more substantial consequences than outright dismissal of the charges, but allows defendants to avoid the risks and anxieties associated with further prosecution and the 'criminal stigma' that attaches to convictions." *Id.* (citing *Lancaster v. Kindor,* 471 N.Y.S.2d 573, 579 (App. Div. 1st Dep't 1984)). As the *Doyle* Court observed, a contrary conclusion that the FLSA applied to persons agreeing to pursue these types of programs would threaten the objective of the programs while failing to further Congress's purpose in enacting the FLSA, which was to "eliminate, as rapidly as practicable, substandard labor conditions throughout the nation." *Id.* (quoting *Powell v. U.S. Cartridge Co.,* 339 U.S. 497, 509–10 (1950)).

 **\*8** The Court finds this analysis persuasive. Like the plaintiffs in *Doyle,* Vaughn did not agree to participate in the Phoenix House treatment program for the purpose of receiving monetary compensation; indeed nowhere in his Amended Complaint or opposition brief does he suggest that expected compensation played any role in his decision to enter the program. Rather, Plaintiff agreed to participate in the T.A.S.C./ D.T.A.P. program in order to resolve the criminal charges against him. *See* Am. Compl. at 7, 9. Furthermore, although Plaintiff contends that it was Phoenix House and not he who benefited from the work assignments, he acknowledges that had he successfully completed the program, the charges against him would have been dismissed without a prison sentence. *Id.* at 7. It thus appears that the "principal benefit" of Plaintiff's participation in the program was to him and his assertions to the contrary are implausible. *See Doyle,* 2015 WL 926001, at *7 (citing *Isaacson v. Penn Comm. Servs., Inc.,* 450 F.2d 1306, 1309–10 (4th Cir.1971)).

Finally, the Second Circuit's holding in *Danneskjold v. Hausrath,* 82 F.3d 37, 39 (2d Cir.1996), that "the FLSA does not apply to prison inmates in circumstances in which their labor provides services to the prison, whether or not the work is voluntary" provides further support for this

Court's conclusion. While Vaughn, like the plaintiffs in *Doyle,* was not a prison inmate, as with the relationship between inmates and the prisons where they are incarcerated, the relationship between Plaintiff and Phoenix House was "not one of employment." *See id.* at 42. Rather, Plaintiff's work assignments were "designed to train and rehabilitate" and his "labor [did] not compete with private employers." *See id.; See also Sanders v. Hayden,* 544 F.3d 812 (7th Cir.2008) (holding that designated sex offenders working at treatment centers are not "employees" under FLSA); *Wingate v. New York City,* 2014 WL 3747641, at *2 (E.D.N.Y. July 25, 2014) (concluding that FLSA did not apply to pretrial detainees).

Indeed, each of the work assignments described in the Amended Complaint are directly—and exclusively—related to the operation of Phoenix House. *See Danneskjold,* 82 F.3d at 43 (describing duties that serve institutional needs such as "cook[ing], staff[ing] the library, perform[ing] janitorial services, work[ing] in the laundry, or carry[ing] out numerous other tasks that serve various institutional missions of the prison, such as recreation, care and maintenance of the facility, or rehabilitation"). Plaintiff alleges, for instance, that he was assigned to serve as the point person at various locations in the facilities. He also describes working as an overnight coordinator at the front desk of the facility to communicate messages to the point persons on other floors, and working in the garbage room and warehouse. Am. Compl. at 5–7. Plaintiff thus did not "produce goods or services that [were] sold in commerce," but rather, merely provided services for the facility where he received treatment. *See Danneskjold,* 82 F.3d at 44; *Doyle,* 2015 WL 926001, at *8.

 **\*9** For these reasons, Plaintiff does not qualify as a covered "employee" under the FLSA and his claim fails as a matter of law.

## II. Supplemental Jurisdiction Over Plaintiff's Claims Under State and City Law

Pursuant to 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim ... if the district court has dismissed all claims over which it has original jurisdiction." To determine whether to exercise supplemental jurisdiction, district courts must balance the "values of judicial economy, convenience, fairness, and comity." *See also Carnegie–Mellon Univ. v. Cohill,* 484

U.S. 343, 350 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n. 7. Here, there are no unusual circumstances warranting the continued exercise of supplemental jurisdiction over Plaintiff's claims under state and city law. Accordingly, they too are dismissed.

### III. Defendants' Remaining Arguments

Having dismissed the entirety of the Amended Complaint, the Court need not reach Defendants' additional arguments regarding statute of limitations, the involvement of Defendants Hoffman and Jasper in the conduct alleged, and service.

### CONCLUSION

For the reasons set forth above, the Amended Complaint is dismissed in its entirety. In light of the principles articulated herein, the Court is doubtful that any amendment to the Complaint would cure its deficiencies. In deference to Plaintiff's *pro se* status, however, the Court grants leave to amend to the extent he has a good faith basis for doing so. *See Neilsen,* 746 F.3d at 62 ("Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim.") (citation omitted). If he chooses to file a Second Amended Complaint, Plaintiff must do so within thirty days of this Opinion and Order or this dismissal shall become final.

The Clerk of the Court is respectfully directed to close item 30 on the docket.

SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2015 WL 5671902, 25 Wage & Hour Cas.2d (BNA) 1204

---

### Footnotes

1    Phoenix House is improperly named in the Amended Complaint as "Phoenix House Programs of New York." The Clerk of the Court is respectfully directed to change the caption to "Phoenix Houses of New York, Inc."

2    The facts set forth herein are taken from Plaintiff's Amended Complaint and are presumed to be true for purposes of this motion to dismiss.

3    On its website, the New York State Office of Alcoholism and Substance Abuse Services ("OASAS") identifies both programs as Alternatives to Incarceration programs used in the state. TASC is described as a program licensed by OASAS to "to identify suitable offenders with substance abuse problems for diversion." *See* "Treatment Accountability for Safer Communities ("TASC")," *available at* https://www.oasas.ny.gov/cj/ alternatives/TASC.cfm. DTAP is described as a program initiated by the Queens County District Attorney in 1990 to divert "prison bound felony offenders to residential drug treatment." *See* "Drug Treatment Alternatives to Prison "DTAP," *available at* https://www.oasas.nv.gov/ci/alternatives/DTAP.cfm. "Qualified defendants enter a felony guilty plea and receive a deferred sentence that allows them to participate in a residential therapeutic community (TC) drug treatment program for a period of 18 to 24 months. Those who successfully complete the program have their charges dismissed; those who fail are brought back to court by a special warrant enforcement team and sentenced to prison." *Id.*

4    Plaintiff's allegations do not make clear whether he agreed to participate in the T.A.S.C./ D.T.A.P. programs in conjunction with pleading guilty to the charges against him, or prior to the disposition of those charges. In any event, this issue is not dispositive of any of the claims discussed below.

5    Plaintiff alleges that he began carpentry classes in December 2010, but based on the respective timing of other allegations in the Amended Complaint, it appears this is a typographical error and that the classes began in December 2009.

6    Plaintiff further alleges that during his time at Phoenix House, he was denied home visits and visits from family members because of his work refusals. Am. Compl. at 12. He also claims to have been prohibited from going on various trips and outings with the other residents for the same reason. *Id.*

7    Although the Amended Complaint cites 42 U.S.C. § 1981, Am. Compl. at 15, the Second Circuit has not recognized an independent right of action under § 1981. *See Smith v. Metro. Dist. Comm'n,* 2015 WL 2337903, at *3 n. 7 (D.Conn. May 13, 2015). In *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701 (1989), the Supreme Court held that § 1983 constitutes the exclusive federal remedy for the violation of the rights guaranteed in § 1981 by state governmental units. Section 1981 has since been amended; however, all but one of the circuit courts to have subsequently addressed the issue continue to follow the rule established in *Jett. Compare Brown v. Sessoms,* 774 F.3d 1016, 1021 (D.C.Cir.2014); *Campbell v. Forest Preserve Dist. of Cook Cnty., Ill.,* 752 F.3d 665, 671 (7th Cir.2014); *McGovern v. City of Phila.,* 554 F.3d 114, 121 (3d Cir .2009); *Arendale v. City of Memphis,* 519 F.3d 587, 599 (6th Cir.2008); *Bolden v. City of Topeka, Kan.,* 441 F.3d 1129, 1137 (10th Cir.2006); *Oden v. Oktibbeha Cnty., Miss.,* 246 F.3d 458, 464 (5th Cir.2001); *Butts v. Cnty. of Volusia,* 222 F.3d 891, 894 (11th Cir.2000); *Dennis v. Cnty. of Fairfax,* 55 F.3d 151, 156 (4th Cir.1995), *with Fed'n of African Am. Contractors v. City of Oakland,* 96 F.3d 1204, 1212 (9th Cir.1996). This Court adopts the majority view in concluding that § 1983 provides Plaintiff's exclusive federal remedy.

8    Even if Plaintiff was involuntarily sent to Phoenix House, however, such a requirement of the court—without more-is insufficient to establish state action on Phoenix House's part. *See Byng v. Delta Recovery Servs.,* 2013 WL 3897485, at *8 (N.D.N.Y. July 29, 2013), *aff'd,* 568 F. App'x 65 (2d Cir.2014) (holding that even if the plaintiff was "forced to reside" at a substance abuse treatment center as a condition of parole, that fact was insufficient deem the facility a state actor for purposes of § 1983).

9    These cases are distinguishable. In *Wilson v. Phoenix House,* the district court found the state action requirement to be satisfied because the plaintiff alleged she was "confined" to Phoenix House to serve her sentence and Phoenix House exercised a public function by "discharging [plaintiff] to the court" after asking the district attorney to transfer her to another facility. 2011 WL 3273179, at *1. That discharge was the subject of the plaintiff's § 1983 claim. By contrast, Vaughn's allegations here concern the treatment-Or alleged lack thereof-he received at Phoenix House. Unlike in *Wilson,* there is no allegation that he was "confined" there; rather, he was told that he could leave if he chose not to comply with the program's requirements. *See* Am. Compl. 89. Moreover, Vaughn alleges that it was the court, not Phoenix House, that determined whether he was in compliance with his "agreement" with the court. *See id.* 1012.

    In *Johnson v. White,* the district court suggested in dicta that the relationship between the state and a treatment center may be sufficient to establish that the facility was delegated a public function where the plaintiff was "required to undergo inpatient treatment at [the defendant facility] as an outgrowth of his sentence, and ... [the facility] accepted him on those terms." 2010 WL 3958842, at *4 n. 5 (S.D.N.Y. Sept. 9, 2010). In that case, however, whether defendant was a state actor was not at issue; as a result, the court did not engage in a fact-specific analysis of the relationship between the court and the facility in question. *See id.*

10   To the extent that Plaintiff pled guilty as part of his T.A.S.C./D.T.A.P. agreement prior to his inpatient treatment at Phoenix House, he is barred as a matter of law from asserting a Thirteenth Amendment Claim. U.S. Const. amend. XIII (amendment does not apply to "punishment for crime whereof the party shall have been duly convicted").

**Vaughn v. Phoenix House Programs of New York, Not Reported in F.Supp.3d (2015)**

25 Wage & Hour Cas.2d (BNA) 1204

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by    Vaughn v. Phoenix House Programs of New York,
S.D.N.Y.,    September 25, 2015

2010 WL 3958842
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.

Shawn JOHNSON, Plaintiff,
v.
Rosalind WHITE [1] et al., Defendants.

No. 06 Civ. 2540(LAP).
|
Sept. 9, 2010.

*MEMORANDUM AND ORDER*

LORETTA A. PRESKA, Chief Judge.

**\*1** Plaintiff Shawn Johnson brings this action *pro se*
pursuant to 42 U.S.C. § 1983 alleging, *inter alia,* that
Defendants committed and allowed others to commit acts
of sexual harassment against him while he was a patient at
the Addicts Rehabilitation Center ("ARC") in Manhattan.
The Court previously entered a default judgment against
Defendant Rosalind White [dkt. no. 33], who failed to
appear after having been served with process [dkt. no. 20].
Defendants Bruce Allen, Gary Carswell, James Allen, and the
ARC now move for summary judgment. [Dkt. no. 54.] For the
reasons set forth below, Defendants' motion is GRANTED in
part and DENIED in part.

I. *BACKGROUND*
At all relevant times, Plaintiff was a resident patient of
the ARC at its 1881 Park Avenue facility. (Compl.¶ II.A.)
Defendant Rosalind White was an employee of the same
ARC facility. (*Id.* ¶ II.B.) Defendant Bruce Allen was the
Director of Housing and Security of the ARC and worked in
the second of the ARC'S two Manhattan facilities, located at
2015 Madison Avenue. (*Id.* ¶ II.C.) Defendant Gary Carswell
was the Director of Treatment of the ARC and worked in the

2015 Madison Avenue facility. (*Id.* ¶ II .D.) Defendant James
Allen was the Executive Director "overseeing all operations"
of the ARC and also worked in the 2015 Madison Avenue
facility. (*Id.* ¶ II.E.) Plaintiff has sued all of these Defendants
in both their individual capacities and their capacities as ARC
employees and supervisors. (*Id.* ¶¶ II.B–II.E.) He has also
named the ARC itself as a Defendant. (*See* Compl.)

On or about July 22, 2004, Plaintiff was admitted for
inpatient drug and alcohol treatment at the ARC as an
alternative to incarceration. (Compl. ¶ 1; Carswell Aff. ¶ 21.)
The ARC, which has two relevant locations in Manhattan,
assigned Plaintiff living quarters at its 1881 Park Avenue
address. (Compl. ¶ 2.) About September 2004, Defendant
White began making unwanted sexual advances toward
Plaintiff. (Compl.¶¶ 3–4.) White's unwanted advances, which
included at least one sexual assault, continued through about
November 20, 2004, when Plaintiff left the ARC out of fear
for his own well being. (Compl. ¶ 38; Carswell Aff. ¶ 21.)

The facts that are particularly relevant to the remaining
parties involve whether White's supervisors—Defendants
Bruce Allen, Gary Carswell, and James Allen—were
on notice of White's behavior toward Plaintiff. With respect to
this issue, the parties advance two inconsistent versions of the
facts.

Defendants' version of the facts is as follows. Plaintiff
filed a written complaint about White with James Allen on
November 11, 2004. (Carswell Aff. ¶ 11.) Carswell first
learned of Plaintiff's troubles with White around November
15, 2004, [2] "when the Plaintiff verbally advised Defendant
Bruce Allen that Defendant White had engaged in certain
acts of sexual harassment." (*Id.*) Defendants "immediately
relieved [White] of her duties ... in order to separate the
accused from the accuser ...." (*Id.* ¶ 14.) On November
18, 2004, Bruce Allen and Carswell held a meeting with
Plaintiff and Defendant White. (*Id.* ¶ 15.) Allen and Carswell
determined, based on the alleged times the incidents occurred,
that four people at the ARC may have been able to witness
some of the incidents take place. (*Id.* ¶ 16.) They asked
those individuals to submit written statements regarding
what, if any, interactions they observed between Plaintiff and
White. (*Id.* ¶ 17.) None of those individuals stated that he or
she observed any interactions between Plaintiff and White.
(*Id.,* Ex. 1 at 1–4.) Allen and Carswell also "interviewed
Defendant White and inquired of her as to the nature of
her interaction with the Plaintiff. Ms. White denied the
Plaintiff's allegations." (*Id.* ¶ 19.) Sometime thereafter, Allen

and Carswell determined that Plaintiff's allegations were unfounded. (*Id.* ¶ 22.) Carswell asserts that "[p]rior to the allegations by the Plaintiff, there had been no other allegations against Defendant White regarding sexual harassment." (*Id.* ¶ 23.) Ultimately, Allen and Carswell "advis[ed] her to be particularly conscious of her interactions with clients" (*id.*), and Plaintiff left the ARC several days later.

**\*2** Plaintiff's version of the facts differs substantially from Defendants' account. According to Plaintiff, Defendants had known about White's propensity to commit acts of sexual harassment before White started harassing him. Plaintiff proffers the Affidavit of Lena Saunders, another ARC resident at Plaintiff's facility, who states:

> On or about October, 2004, I once again witnessed some inappropriate activities between [White] and Shawn Johnson, so I went to James Allen and Gary [Carswell] and told them that [White] was trying to entice Shawn Johnson sexually by feeling and caressing on Shawn Johnson and rubbing her butt against Shawn Johnson.

> James Allen and Gary [Carswell] told me that they would look into it.

(Saunders Aff. ¶¶ 10–11.) Plaintiff also proffers an ARC internal memorandum in which Bruce Allen and Carswell issue a warning to White on December 8, 2004 in response to Plaintiff's allegations. (*See* Pl.'s Ex. 1 at 1.) The memorandum states, in relevant part:

> Ms. White this is inappropriate behavior for a staff member. Let me remind you Ms. White of the incident, that occurred on 10/1/04 with a staff member, where you were being investigated for alleged, sexual harassment. You stated in your memo that you were just playing with him. Ms. White there seems to be a pattern here and the H & S Department is now cautioning you to cease with this type of behavior.

> Please be advised that you will not be (paid) for 11/16/04, you will return back to work 11/17/04 (10P–6A) in 2015.

(*Id.*) The document is signed and dated by both Bruce Allen and Carswell in addition to White. (*See id.*)

Plaintiff himself first complained about White to Bruce Allen on November 10, 2004. (Johnson Dep. 18:16–23.) Defendants investigated his complaint and, as a result, transferred White to the 2015 Madison Avenue facility. (*Id.* at 19:18–24.) White, however, was still able to have contact with Plaintiff because "she c[ould] move around a facility

freely." (*Id.* at 20:12–15.) Plaintiff left the facility several days later. (*See id.* at 37:19–22 (November 18, 2004); Compl. ¶ 38 (November 20, 2004).)

## II. *SUBJECT MATTER JURISDICTION*

The Court has jurisdiction over Plaintiff's claims under § 1983 and other federal statutes pursuant to 28 U.S.C. § 1331. The Court exercises supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a).

## III. *DISCUSSION*[3]

### A. *Legal Standard for Summary Judgment*

As this is a motion for summary judgment, Defendants will prevail only " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.' A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.' " *Overton v. New York State Div. of Military and Naval Affairs,* 373 F.3d 83, 89 (2d Cir.2004) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In assessing whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to the non-moving party. *Lucente v. IBM Corp.,* 310 F.3d 243, 253 (2d Cir.2002).

### B. *Application to Defendants' Motion*

**\*3** As a preliminary matter, Defense counsel cites no authority for his assertions regarding the substantive law, and he only superficially applies his purported legal standards to the facts at issue here. Pursuant to Local Rule 7.1(a), this is sufficient cause to deny Defendants' motion. Nevertheless, the Court will address the only serious argument discernible from Defendants' submissions: that Plaintiff has failed to proffer sufficient evidence to raise a genuine issue of fact with respect to any of his claims.

1. *Section 1983* Claim

"*Section 1983* liability can be imposed upon individual employers, or responsible supervisors, for failing properly to investigate and address allegations of sexual harassment when through this failure, the conduct becomes an accepted custom or practice of the employer." *Gierlinger v. N.Y. State Police,* 15 F.3d 32, 34 (2d Cir.1994).

Here, Defendants assert in Carswell's Affidavit, Bruce Allen's Affidavit, and Defendants' responses to Plaintiff's interrogatories that they had no prior knowledge of Defendant White's commission of acts of sexual harassment; thus, they could not have failed properly to address White's conduct. Carswell states: "Prior to the allegations by the Plaintiff, there had been no other allegations against Defendant White regarding sexual harassment." (Carswell Aff. ¶ 23.) Bruce Allen states:

> [A]s of November 10, 2004, the date of my conversation with the Plaintiff, Defendant White had not been the subject of any prior Complaint of sexual harassment.... The fact is that Defendant White's personnel file is devoid of any reference or indication of any kind, that she was the subject of any Complaint of sexual harassment from any ARC client or staff member.

(Allen Aff. ¶ 6.) And Defendants gave the following response t one of Plaintiff's interrogatories:

> Interrogatory No. 21: State in complete detail, throughout the entire employment period of defendant Ros[alind] White working and/or volunteer [sic] at the Addict Rehabilitation Center; has she ever been accused of sexual misconduct by a patient, and/or staff member?
>
> Response: None.

(Pl.'s Ex. B at 6.) These documents carry Defendants' burden t demonstrate a *prima facie* entitlement to summary judgment with respect to Plaintiff's *§ 1983* claim because they show, as of November 10, 2004, that Defendants could not have permitted White's sexual harassment to rise to the level of an accepted custom or practice.[4]

Plaintiff, however, has amply demonstrated that a material issue of fact exists as to this claim. Plaintiff proffers two documents that contradict Defendants' sworn statements: the Affidavit of Lena Saunders and Defendants' warning memorandum to Rosalind White. Lena Saunders was a resident of the ARC'S 1881 Park Avenue facility during all times relevant to Plaintiff's remaining claims. (Saunders Aff. ¶¶ 1, 5.) According to Saunders, Rosalind White told her in the course of a conversation that Plaintiff "was a faggot because he was acting like he was afraid of having sexual intercourses [sic] with her." (*Id.* ¶ 7.) She continues:

> **\*4** On or about September, 2004, I started to notice and see inappropriate behaviors between Ros[alind] White and Shawn Johnson.
>
> On or about October, 2004, I once again witnessed some inappropriate activities between Ros[alind] White and Shawn Johnson, so I went to James Allen and Gary C[a]rswell and told them that Ros[alind] White was trying to entice Shawn Johnson sexually by feeling and caressing on Shawn Johnson and rubbing her butt against Shawn Johnson.
>
> James Allen and Gary C[a]rswell told me that they would look into it.

(*Id.* ¶¶ 9–11.) Because these statements contradict Defendants' sworn statements, Saunders's Affidavit alone raises a genuine issue of fact as to whether Defendants knew or reasonably should have known prior to the middle of November that White had a propensity to commit acts of sexual harassment.

Plaintiff's most significant evidence, however, is the ARC internal memorandum issuing White a warning for sexual harassment. (*See* Pl.'s Ex. 1 at 1.) This memorandum, which was authored by Bruce Allen and signed by both Bruce Allen and Gary Carswell, acknowledges that White had previously been investigated in early October for allegedly sexually harassing a staff member. (*See id.*) It states that *"there seems to be a pattern here,"* referring to allegations of sexual harassment against White. (*Id.* (emphasis added).) This memorandum not only contradicts Defendants' sworn statements but also implies that Carswell and Bruce Allen's Affidavits and Defendants' interrogatory responses contain false statements. In addition, Plaintiff testified in his

deposition that when he complained to Carswell, Bruce Allen, and James Allen about White's behavior toward him, "[t]hey told [him] to keep quiet and hush about this incident." (Johnson Dep. 14:5–6.) Taken together, Plaintiff's evidence raises a genuine issue of material fact as to whether Defendants Bruce Allen, James Allen, Gary Carswell, and the ARC unlawfully permitted White's sexual harassment of Plaintiff.

In sum, Plaintiff has shown that a reasonable jury could infer (1) that Defendants knew in early October that White had sexually harassed a coworker, (2) that Defendants knew in early October that White had also been sexually harassing Plaintiff, and (3) that Defendants did not stop White from sexually harassing Plaintiff until the middle of November. A reasonable jury could also infer that whatever action Defendants took did not, under the circumstances, constitute a proper investigation. Accordingly, Defendants' motion is denied with respect to Plaintiff's ⬜ § 1983 claim against Carswell, Bruce Allen, James Allen, and the ARC. [5]

### 2. *Negligent Supervision and Retention Claims*

Construing the Complaint liberally, Plaintiff also asserts tort claims against Defendants under New York state law for the negligent supervision and retention of Rosalind White. Defendants acknowledge as much in their moving brief, setting forth an interpretation of the applicable legal standard for such causes of action and conclusorily asserting that Plaintiff's evidence does not establish a *prima facie* claim of negligent retention or supervision. (*See* Defs.' Mem. Supp. 3.) Yet Defendants' motion must be denied as to these claims for the same reasons that applied to the ⬜ § 1983 claim.

 **\*5** "In order to recover against an employer for [the] negligent retention of an employee, a plaintiff must show that 'the employer was on notice of a propensity [of the employee] to commit the alleged acts.' " *G.G. v. Yonkers Gen. Hosp.,* 50 A.D.3d 472, 858 N.Y.S.2d 11, 12 (1st Dep't 2008) (quoting *White v. Hampton Mgmt. Co.,* 35 A.D.3d 243, 827 N.Y.S.2d 120, 121 (1st Dep't 2006)). Here, as explained above, Plaintiff's evidence that Defendants were on notice of White's propensity to commit acts of sexual harassment —particularly against Plaintiff—raises an issue of fact as to whether Defendants unreasonably retained or failed to supervise White, thereby causing Plaintiff to continue to be subjected to her harassing conduct. Accordingly, Defendants' motion with respect to Plaintiff's negligent retention and

supervision claims against Carswell, Bruce Allen, James Allen, and the ARC is denied.

### 3. *Respondeat Superior Liability*

Plaintiff appears to assert a theory of Defendants' liability based on the doctrine of *respondeat superior.* To the extent Plaintiff's ⬜ § 1983 claim relies on this theory, the claim is dismissed because the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under ⬜ § 1983." 🚩 *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (internal quotation marks omitted). To the extent Plaintiff's negligent retention claim under New York state law relies on this theory, that claim, too, is dismissed because White's sexual harassment of Plaintiff was not within the scope of her employment. *See Grasso v. Schenectady Cnty. Pub. Library,* 30 A.D.3d 814, 817 N.Y.S.2d 186, 190 (3d Dep't 2006) (holding that plaintiff's coworkers' sexually harassing conduct "amounts to intentional torts and, thus, falls outside the scope of their employment"); *Somers v. Titan Indem. Co.,* 289 A.D.2d 563, 735 N.Y.S.2d 614, 615 (2d Dep't 2001) (holding that town employees' "intentional acts of sexual harassment[ ] were not within the scope of their employment and did not advance the [t]own's interests"); *Tumminello v. City of N.Y.,* 212 A.D.2d 434, 622 N.Y.S.2d 714, 715 (1st Dep't 1995) (holding that acts of sexual harassment were "clearly not job-related, or performed in furtherance of [the employee's] official duties, and thus were not within the scope of his employment").

### 4. *Intentional Infliction of Emotional Distress*

Plaintiff asserts a claim of intentional infliction of emotional distress against Defendants based on their failure to protect him from White's sexual advances. There is no evidence in the record, however, that Defendants' alleged failure to properly to supervise White was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regard as atrocious, and utterly intolerable in a civilized community." ⬜ *Murphy v. Am. Home Prods. Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86, 90 (N.Y.1983). Accordingly, Plaintiff's claim of intentional infliction of emotional distress is dismissed.

### 5. *ADA and Rehabilitation Act Claims*
 **\*6** Plaintiff alleges that Defendants intentionally discriminated against him because he was disabled. The record, however, contains no evidence that Defendants failed

properly to supervise White because Plaintiff was disabled. See 📖 *Shomo v. City of N.Y.,* 579 F.3d 176, 186 (2d Cir.2009) (requiring that the adverse action be "by reason of plaintiff['s] disabilities" and noting that substantially the same standard applies to claims under both the ADA and the Rehabilitation Act). Accordingly, Plaintiff's ADA and Rehabilitation Act claims are dismissed.

### 6. *New York Public Health Law Claim*

Plaintiff asserts that Defendants Carswell, Bruce Allen, James Allen, and the ARC deprived him of his right to the privacy of his medical records by failing to protect them from unauthorized access by Defendant White. 📖 N.Y. Pub. Health Law § 2801–d provides in relevant part: "Any residential health care facility that deprives any patient of said facility of any right or benefit [conferred by, *inter alia,* a New York state statute] shall be liable to said patient for injuries suffered as a result of said deprivation ...." N.Y. Mental Hyg. Law § 22.05(b) provides: "All records of identity ... or treatment in connection with a person's receipt of chemical dependence services shall be confidential and shall be released only in accordance with applicable provisions of the public health law, any other state law, federal law and duly executed court orders."

Here, Defendants do not contend that Rosalind White's access of Plaintiff's personal records at the ARC would not have violated § 22 .05(b); rather, they contend only that White did not access Plaintiff's records. Defendants proffer two documents in support of their contention: Carswell's Affidavit and a log book from the ARC'S data department. Carswell states that the Data Department is "where all records are maintained." (Carswell Aff. ¶ 29.) He continues:

> "We were unable to find the logs for 2004 and therefore, we cannot provide the entries relative to the Plaintiff's records, or to show what records were taken or delivered to clinical staff or counseling staff who have authorization to have access to the Plaintiff's records or records of any client in the program."

(*Id.*) Defendants purport to show through their presentation of the log book that only authorized ARC employees—the Treatment Staff—are permitted to access patients' files. (*Id.*)

Neither document carries Defendants' burden to show a *prima facie* entitlement to summary judgment on this claim. As Carswell admits in his Affidavit, Defendants have no evidence that Rosalind White did not access Plaintiff's files in 2004. (*Id.*) Without such evidence, there remains a disputed issue of fact, particularly in light of Plaintiff's deposition testimony that Rosalind White was aware that Plaintiff was a parolee during his residence at the ARC. (*See* Johnson Dep. 45:13–47:4.) And the log book does not support Defendants' contention because there is no evidence that the individuals whose names are listed in the book are in fact Treatment Staff who are authorized to access patients' records. [6] (*See* Fleming Aff., Ex. E.)

**\*7** The Court notes that 📖 N.Y. Pub. Health Law § 2801–d provides an affirmative defense: "No person who pleads and proves, as an affirmative defense, that the facility exercised all care reasonably necessary to prevent and limit the deprivation and injury for which liability is asserted shall be liable under this section." Defendants, however, failed to plead this affirmative defense in their Answer. (*See* Answer.) Accordingly, Defendants will not be permitted to introduce at trial any evidence that they exercised reasonable care in preventing and limiting the violation of Plaintiff's privacy in his ARC records.

### 7. *Other Statutory Claims*

Plaintiff purports to raise several other claims under New York state statutes. First, Plaintiff asserts that the ARC failed properly to rehabilitate him by intentionally allowing White to commit acts of sexual harassment against him. The statute Plaintiff cites, however, 📖 N.Y. Mental Hyg. Law § 19.01, does not appear to provide a cause of action. Rather, 📖 § 19.01 is the legislature's "Declaration of policy" underlying the Alcoholism and Substance Abuse Act. Plaintiff cites no authority holding that this policy statement provides a private right of action, and the Court can find none. Accordingly, Plaintiff's claim under 📖 § 19.01 is dismissed.

Second, Plaintiff asserts that James Allen violated the New York Mental Hygiene Law by failing properly to place notices of patients' rights throughout the ARC facilities. Although

N.Y. Mental Hyg. Law § 22.03(c) imposes this burden on James Allen, there is no evidence in the record to support Plaintiff's allegations that Allen failed to do this or that Plaintiff was harmed thereby. (*See* Johnson Dep. 50:13–25 (acknowledging that Plaintiff was provided with documents regarding his rights).) Accordingly, Plaintiff's claim under § 22.03 is dismissed. [7]

## IV. *CONCLUSION*

For the foregoing reasons, Defendants' motion [dkt. no. 54] is GRANTED with respect to Plaintiff's claims based on *respondeat superior,* intentional infliction of emotional distress, the ADA, the Rehabilitation Act, the New York Mental Hygiene Law §§ 19.01 and 22.03, and all purported causes of action described in footnote 4 of this Memorandum.

Defendants' motion is DENIED with respect to Plaintiff's § 1983 claim, negligent supervision claim, negligent retention claim, and New York Public Health Law claim. These claims are sustained as to Gary Carswell, Bruce Allen, James Allen, and the ARC. Plaintiff's motion [dkt. no. 62] is DENIED as moot. Defense counsel in advised that future submissions of substantively deficient memoranda of law, such as was offered in support of this motion, may result in sanctions. The parties shall confer and inform the Court by 5:00 pm on Monday, September 20 how they propose to proceed.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 3958842

## Footnotes

1    The Clerk of Court shall amend the caption to reflect the actual spelling of Defendant White's name as set forth in her employment records. (*See, e.g.,* Pl.'s Ex. 1.)

2    Carswell also identifies this date as having been a Wednesday. (Carswell Aff. ¶ 11.) Because November 15, 2004 was a Monday, however, Carswell's Affidavit is ambiguous as to whether he was actually referring to November 15 or November 17.

3    Because Plaintiff is *pro se,* the Court construes his papers "to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

4    The written statements of Odell Berkley, William Wells, Cecilia Samuel, and Julio Encarnacion are inadmissible for the truth of the matters asserted therein because those statements are hearsay: they were neither made under penalty of perjury nor offered by the declarants themselves. (*See* Carswell Aff., Ex. 1 at 1–4.) Accordingly, the Court considers these statements only as evidence of (1) Defendants' state of mind regarding the investigation they conducted and (2) the fact that Defendants did indeed conduct an investigation.

5    "For purposes of section 1983, the actions of a nominally private entity are attributable to the state when ... the entity has been delegated a public function by the state ...." *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir.2008). Private rehabilitation facilities are not necessarily subject to suit under § 1983, even if they provide treatment to parolees. *Valez v. SES Operating Corp.,* No. 07 Civ. 10946(GEL), 2008 WL 2662808, at *2 (S.D.N.Y. July 3, 2008). Here, although the ARC is a private organization, Defendants do not contend that the ARC is not subject to suit under § 1983. Accordingly, the Court thus deems that argument waived.

     Even if it were not waived, however, Defendants admit that "Plaintiff was referred to ARC by the Criminal Justice System. He was required to undergo treatment as an alternative to incarceration ." (Carswell Aff. ¶ 21.) Vis-à-vis Plaintiff, therefore, the ARC was fulfilling the role of the New York State Department of Correctional Services. Because Plaintiff was required to undergo inpatient treatment at the ARC as an

outgrowth of his sentence, and because the ARC accepted him on those terms, the ARC "had been delegated a public function by the state" in its relationship to Plaintiff. *Sybalski,* 546 F.3d at 257.

Accordingly, on the facts of this case, the ARC is subject to Plaintiff's cause of action under § 1983.

6    Plaintiff asserts in his opposition that he requested, and Defendants failed to provide, certain log books during the course of discovery. (Pl.'s Opp'n Mem: 10 n. 1.) Defendants represent that they were unable to find the relevant log books. (Carswell Aff. ¶ 29.) Thus, the Court will not order Defendants to produce those books, and Defendants will not be permitted to introduce those books into evidence at trial.

7    The Court notes that Plaintiff's Amended Complaint, being inexpertly drafted, purports to allege additional causes of action not discussed above. These include breaches of fiduciary duty, violations of constitutional rights, other forms of discrimination, civil-rights violations, violations of other federal and state statutes, and common-law torts. Having reviewed the record, the Court concludes that the evidence supports only the claims—and their factual bases—that have been expressly discussed herein. Accordingly, all claims not expressly sustained for trial are dismissed.

---

**End of Document**    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2021 Thomson Reuters. No claim to original U.S. Government Works.    7